[No. B024177. Second Dist., Div. Six. Feb. 18, 1988.]

MARY M. QUIRK, Plaintiff and Appellant, v.
BOARD OF EDUCATION OF MOORPARK UNIFIED SCHOOL
DISTRICT et al., Defendants and Respondents.

**COUNSEL**

James W. Briggs for Plaintiff and Appellant.

Littler, Mendelson, Fastiff & Tichy, Richard J. Currier and C. Anne Hudson for Defendants and Respondents.

## OPINION

**STONE (S. J.), P. J.**—Appellant, Mary Quirk, appeals the denial of her petition for a writ of mandate seeking to compel respondent, Moorpark Board of Education (Board), to reinstate her as principal of Moorpark Memorial High School. She asserts that the Board wrongfully released her from that position and reassigned her to a classroom teaching position on the basis of incompetency, without conducting an evaluation pursuant to Education Code section 44896.[1] We hold that she failed to show that incompetency was a basis for her reassignment and affirm the judgment denying the writ.

### FACTS

The facts are undisputed. On July 1, 1984, the Board assigned Ms. Quirk, who is certificated as a permanent (tenured) classroom teacher, to the position of principal of Moorpark Memorial High School for the 1984-1985 school year. On March 14, 1985, pursuant to the requirements of the Stull Act (Ed. Code, §§ 44660-44665), the former superintendent provided her with a positive written evaluation which she concedes neither stated nor implied any incompetence. The evaluation showed she had been performing satisfactorily.

On February 21, 1986, the new superintendent, Mr. Slater, informed Ms. Quirk he would be recommending to the Board that she be reassigned from her position as principal to another certificated position. He told her he felt a need for a new and different type of leadership, which he described as "a maintenance type of leadership"; someone who would be a " 'refiner.' "

He told her she was very good at initiating change and getting things going, but he needed someone who would keep things going. They discussed problems at the school, including low employee morale, inadequate scheduling, the lack of coherent plans for in-service training, the lack of effective

---

[1] Education Code section 44896 states: "Whenever a person employed in an administrative or supervisory position requiring certification qualifications is transferred to a teaching position, the governing board of the school district shall give such employee, when requested by him, a written statement of the reasons for such transfer. If the reasons include incompetency, an evaluation of the person pursuant to Article 11 (commencing with Section 44660) of Chapter 3 of this part shall have been completed not more than 60 days prior to the giving of the notice of the transfer."

communications among employees and the lack of long-range strategies to improve instruction. He offered her the opportunity to be reassigned either as an assistant principal or as a classroom teacher. She said she did not want to be reassigned to a position as an assistant principal.

On February 27, 1986, the Board unanimously acted to reassign her to a classroom teaching position for the 1986-1987 school year. She received timely, personal notice of this decision on February 28, 1986, pursuant to Education Code section 44951. That same day she requested a written statement of reasons for the reassignment, pursuant to Education Code section 44896.

By certified mail the Board sent her its written statement of reasons dated March 13, 1986. That letter reads: "Please accept this letter from the Board of Education of the Moorpark Unified School District as a written response to your request for a written statement of reasons, dated February 28, 1986, for your transfer from a principal position to a teaching position for the 1986-87 school year. Your request was forwarded to the Board of Education by the Director of Personnel, to whom you sent your request. You have not been dismissed from the District, but rather released from your current position as principal and transferred to a teaching position for the 1986-87 school year.

"The Board of Education has determined that on an individual basis the needs of the District will be better served by your being a teacher rather than a principal. The Board of Education believes the needs of the District can better be met with the recruitment of a new principal. The Board soon will begin the process to recruit a new principal."

Aside from a letter by counsel dated April 30, 1986, demanding reinstatement, Ms. Quirk made no further request to meet with the Board or the superintendent to discuss the reassignment, or to request clarification of the statement of reasons provided by the Board. The Board appointed a new principal on May 15, 1986. Ms. Quirk filed this petition for writ of mandate on June 24, 1986.

The parties presented no oral testimony at the hearing on this writ. Ms. Quirk based her argument on the undisputed statements contained in the declarations proffered by the Board.

Superintendent Slater's declaration stated that when he came to the district in August 1985 (about seven months before the initiation of this transfer), several knowledgeable educators in the county told him that the high school needed improvement. Other educators said there were problems with

the educational program at the school. During the 1985-1986 school year he observed problems at the school and received a large number of complaints about the quality of the educational program. He noted that employee morale was low, that operational procedures such as student scheduling and employee evaluations needed better organization and refinement and there was a lack of effective communication among the teaching staff. He thought the high school did not do enough to encourage educational excellence, and there was no long-range strategy to improve instruction. In short, he told the Board that the high school needed to be better and that he was not willing to wait another year before making changes.

He told the Board he thought an effective way to improve a school would be to infuse new leadership. He had indicated to Ms. Quirk that he thought she had something to offer as an administrator, but that this high school needed a different type of leadership than she provided, a "refiner" for a "maintenance type of leadership."

One declarant stated she was aware of problems at the high school, especially regarding teacher involvement and morale. She, too, felt that new leadership could bring about positive changes. Other declarants stated they agreed with Superintendent Slater that the kind of person whose leadership could turn the school around might be characterized as a "superstar." However, no one believed that Ms. Quirk had not been a good, competent principal. In denying the writ, the court concluded she failed to show evidence that incompetency was a basis for her reassignment.

## DISCUSSION

A writ of mandate lies only when the petitioner shows the respondent failed to act upon a clear, ministerial duty to do so, and the petitioner shows a clear right to such performance. (*Berry* v. *Coronado Board of Education* (1965) 238 Cal.App.2d 391, 397 [47 Cal.Rptr. 727]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 65, pp. 702-703.)

Here, the Board's duties were to give timely notice of reassignment, to provide a statement of reasons therefor upon request by petitioner and to evaluate her performance if those reasons include incompetency. The Board provided Quirk both timely notice and a statement of reasons for her reassignment. The statement of reasons did not indicate, on its face, that incompetency was one of the reasons for the reassignment. Nonetheless, Quirk maintains that respondents' declarations show she was reassigned because of her incompetency. We hold that she has not satisfied her burden to

clearly show that one of the reasons for her reassignment is incompetency and affirm the judgment.[2]

■ The term "incompetency" is not defined by the Education Code, either in the context of the demotion of an administrator (Ed. Code, § 44896) or in the more serious context of the dismissal of a certificated individual. (See Ed. Code, §§ 44932, subd. (a)(4) and 44938, subd. (c).)

Although undefined by statute, the term "incompetency" is neither too vague nor too uncertain. (*Perez* v. *Commission on Professional Competence* (1983) 149 Cal.App.3d 1167, 1175 [197 Cal.Rptr. 390].) The *Perez* court said: "It is a plain word and means not competent. (The American Heritage Dict. of the English Language (1981) p. 666.) Competent, in turn, means properly or well qualified; capable—adequate for the purpose, suitable; sufficient. (*Id.,* at p. 271.) Incompetency does not invoke subjective analysis of standards of morality or professionalism . . . dependent on time, circumstances or custom. . . . Importantly, the concept of incompetency is not so arcane as to suggest a court is incapable of reviewing the record . . . to determine if substantial evidence supports the agency conclusion. . . . [I]ncompetency [is] its own standard . . . ." (At pp. 1175-1176.)

■ On the undisputed facts presented, the court below concluded that incompetency was not a basis for the reassignment. ■ We may disregard the trial court's conclusion only if the facts require us to do so. (*McCrocklin* v. *Employment Development Dept.* (1984) 156 Cal.App.3d 1067, 1074 [205 Cal.Rptr. 156].) ■ Here, the facts support the trial court's conclusion. They show that the Board felt that Ms. Quirk did not provide the type of leadership style they thought necessary to deal with the problems at this particular school, even though she was a competent administrator. The use of the amorphous term "superstar," as a description of the type of person desired by some declarants, does not show that the Board considered Ms. Quirk incompetent or that incompetency was a basis for its decision to reassign her.

■ Absent a showing that incompetency was a basis for the transfer or that a contractual provision required it, there is no jurisdictional prerequisite for a Stull Act evaluation before reassignment. (*Jones* v. *Palm Springs Unified School Dist.* (1985) 170 Cal.App.3d 518, 527 [216 Cal.Rptr. 75].)

---

[2] We do not reach the question of what the appropriate remedy would be if she had made a sufficient showing that incompetency was a basis for the reassignment. (But see *Miller* v. *Chico Unified School Dist.* (1979) 24 Cal.3d 703, 717, fn. 16 [157 Cal.Rptr. 72, 597 P.2d 475]; *LaBelle* v. *San Francisco Unified School Dist.* (1983) 140 Cal.App.3d 292, 302 [189 Cal.Rptr. 530]; *Whisman* v. *San Francisco Unified Sch. Dist.* (1978) 86 Cal.App.3d 782, 792 [150 Cal.Rptr. 548].)

The amendment of Education Code section 44896 to provide for evaluations where incompetency is a ground for reassignment does not create any statutory right to retain an administrative position in the school system; a principal still serves at the pleasure of the appointing authority. (*Id.,* at pp. 525-527.) Unless incompetency is a basis for a reassignment, a Board is free to transfer an administrator without cause or evaluation, for any reason satisfactory to the appointing authority, including personality conflicts or differences in views on leadership styles. (See *Jones, supra,* at p. 527, citing *Grant* v. *Adams* (1977) 69 Cal.App.3d 127 [137 Cal.Rptr. 834], and *Anaclerio* v. *Skinner* (1976) 64 Cal.App.3d 194 [134 Cal.Rptr. 303]; also see *Hoyme* v. *Board of Education* (1980) 107 Cal.App.3d 449, 454 [165 Cal.Rptr. 737] and especially *Hentschke* v. *Sink* (1973) 34 Cal.App.3d 19, 23 [109 Cal.Rptr. 549].)

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 19, 1988. Arguelles, J., did not participate therein.