[No. F012130. Fifth Dist. Aug. 14, 1990.]

WALLACE L. McFALL, Plaintiff and Appellant, v.
MADERA UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

COUNSEL

James G. Seely for Plaintiff and Appellant.

Finkle, Davenport & Barsamian, Harry Finkle and Daniel G. Stevenson for Defendants and Respondents.

OPINION

BROWN (G. A.), J.*—Wallace L. McFall appeals from the judgment[1] of the Superior Court denying his petition for a writ of mandate which sought to require the board of trustees of the school district to set aside their order demoting him from principal to teacher of the Eastin-Arcola Elementary School and to reinstate him as principal of the school.

Appellant relies upon noncompliance by the board with provisions of board policy No. 4113.2 and board regulation No. 4113.2 which, for ready reference, we attach as an appendix. The board policy and regulation will hereinafter be referred to jointly as No. 4113.2.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] The notice of appeal was from the "Statement of Decision and Order," which is nonappealable. A judgment denying the writ was subsequently filed on June 28, 1990. We treat the appeal to have been from the judgment.

The parties stipulated to the facts. The stipulation provides: "Wallace L. McFall ('McFall') served as Principal of Eastin-Arcola School for 23 years until June 30, 1986. McFall had permanent status as a teacher in the Madera Unified School District ('District'), but served at the pleasure of the Governing Board ('Board') as Principal under a series of one-year employment agreements, the last of which was for the 1985-86 school year ('Exhibit A').

"On July 2, 1985, McFall received his annual evaluation from Superintendent Duane E. Furman ('Furman'). As a result of the evaluation, Furman recommended that McFall be given a contract for the 1985-86 school year ('Exhibit E').

"If called, Furman would testify that he had been District Superintendent for over 20 years and was Superintendent during all of the relevant events which occurred during the 1985-86 school year.

"He would further testify that, during the period from July, 1985, through March, 1986, he observed the work performance of McFall. Based upon his observations, Furman would testify that he saw no need for improvement on McFall's part, no need to evaluate his performance further, and no basis for any demotion or other adverse personnel action.

"Furman would also testify that in his over 20-year tenure as Superintendent, the Board had never reassigned or demoted a principal without Superintendent Furman's agreement and recommendation. Furman would testify that the circumstances surrounding McFall's reassignment were not 'normal' because Furman did not recommend that McFall be reassigned.

"In November, 1985, three new members were elected to the Board. Ms. Gloria Kunz ('Kunz') and Mr. Joe Rossi ('Rossi') were newly elected to the Board; Mr. Marshall Padilla ('Padilla') was returned to the Board after an absence of several years.

"Between November 12, 1985, and January 14, 1986, the Board directed Furman to notify McFall of his pending reassignment. This Furman did in a meeting with McFall on January 14, 1986.

"If called, McFall would testify that Furman informed him on January 14, 1986 that the Board was considering his reassignment. When McFall asked for reasons, he was told by Furman that the Board had given none.

"Subsequently, Furman arranged for McFall and his Association of California School Administrators ('ACSA') Representative Vern Genesy

('Genesy'), to meet with the Board in closed session on the night of February 25, 1986.

"At the closed session of February 25, 1986 McFall read a prepared statement in which he asked the Board to reconsider his proposed reassignment. Following McFall's reading of his statement, ACSA Representative Genesy spoke to the Board. Genesy stated in his deposition of May 21, 1987, 'I can't remember the exact words, but did state at this time we were not challenging the board's legal rights . . . as long as proper procedures of the ed [sic] code had been followed, something of that nature.' [Citation.] He also reviewed McFall's years in the District, prior service, and good evaluations, and requested the Board to employ good personnel practices and continue McFall as a principal for the additional year he was requesting.

"McFall would further testify that at the conclusion of his and Genesy's presentation to the Board, Rossi told them that the Board had already made its decision and that it would demote McFall.

"Following its closed session, the Board adjourned to open session to conduct its scheduled regular meeting. During the course of the open meeting, the Board received public comment regarding its agenda item 'Reassignment of Wallace McFall, Principal Eastin-Arcola School to Fifth/Sixth Grade Teacher, Berenda School for 1986-87 School Year.' At the close of public comment, the Board voted 7-0 in open session to authorize Superintendent Furman to notify McFall that, pursuant to Education Code 44951, McFall be reassigned for the 1986-87 school year.

"On February 26, 1988, Furman sent McFall a Notice of Release from Administrative or Supervisory Position to officially notify McFall of his reassignment and the nonrenewal of his contract as Principal for 1986-87.

"If called, current Board President Kunz would testify that she independently determined that it was necessary to remove McFall from his position as Principal in the best interests of the District and its students. When Furman told the Board Members that he would not reevaluate McFall and recommend his reassignment, Ms. Kunz thought it imperative to act independently. Kunz would further testify that, even though she had been on the Board only a few months, it was obvious to her that Board action absent a recommendation by the Superintendent was 'not ordinary.'

"Former Board Member Judith Carter ('Carter') would testify that, during her approximately 12 years on the Board, the situation involving McFall was truly unusual and extraordinary. Specifically, during her dozen

years as a Board Member, the Board had never acted unanimously on a personnel matter involving the reassignment of an administrator, which in and of itself was unusual. Even more unusual, however, was that during Carter's tenure on the Board, the Board had never acted to reassign an administrator absent the Superintendent's recommendation and approval.

"Former Board Member Jerry Barden ('Barden') would testify similarly to former Board Member Carter, adding only that he was on the Board 14 years—the longest of any trustee at the time of the Board's action—and that at no time during his 14-year tenure did a situation ever arise where the Board acted contrary to the Superintendent's recommendation or position on an administrative personnel action. On this basis, Barden considered the McFall reassignment 'very unusual' and definitely 'out of the ordinary circumstances.'

"Board Member Rossi would testify that at no time did he state to McFall and Genesy that the Board had already made its decision to demote McFall. His testimony would be supported by all of Board members called to testify.

"By letter dated April 18, 1986, to Brian J. McCully ('McCully'), attorney for the District, McFall's attorney, James G. Seely ('Seely'), protested the February 25, 1986 action by the Board to reassign McFall. In essence, the letter alleged that the Board did not follow its Policy 4113.2, after incorporating it into McFall's one-year employment agreement.

"By letter dated May 15, 1986, McCully acknowledged the Board's action of February 25, 1986, and sought to distinguish the facts and policy in the case of *Jones* v. *Palm Springs Unified School District* (1985) 170 Cal.App.3d 518, from the facts and policy relating to the McFall reassignment.

"By letter dated June 9, 1988, Seely asserted numerous factual and legal differences between the two situations and demanded that McCully serve a copy of the June 9, 1988 letter on each Board Member.

"On June 10, 1986, the Board took final action to reassign McFall to a teaching position for the 1986-87 school year." (Fn. omitted.)

## DISCUSSION

■ The provisions of No. 4113.2 were incorporated by reference into appellant's contract. He claims a property interest in his position as principal by virtue of the contract and contends No. 4113.2 provides the exclusive

procedure to be followed when a managerial or supervisory employee, such as a principal, is to be demoted or reassigned to the classroom. Based on No. 4113.2, appellant claims the board was obligated to provide him with the following procedural rights: "(1) an evaluation completed not more than 60 days prior to the giving of notice of the proposed demotion,

"(2) written notice of a need for improvement,

"(3) the benefit of all available resources of the District for correction of any perceived deficiency,

"(4) the enforcement of a procedure whereby the superintendent (not the Board) would initially determine, based on evaluation, that a demotion was necessary,

"(5) a detailed written statement of the reasons for the superintendent's decision, and

"(6) a meaningful opportunity to discuss the matter with the Board or a hearing before the Board '*prior* to making its (the Board's) decision.' (Italics added.)"

Before addressing this narrow question, we note the board did not violate any of appellant's statutory rights. He received written notice by March 1, 1986, of the board's intention not to renew his contract. (Ed. Code, § 44951.) Education Code section 44896[2] was complied with. Appellant was not entitled to a statement of reasons pursuant to that statute because he did not request such a statement as is required by section 44896. The trial court found he waived such a statement. ■ He was not entitled to an evaluation within 60 days prior to the notice because the demotion was not based on incompetency. (*Quirk* v. *Board of Education* (1988) 199 Cal.App.3d 729, 734-735 [244 Cal.Rptr. 924].)

■ As distinguished from teacher personnel, administrative and managerial personnel do not possess a statutory right to their positions. As noted in *Jones* v. *Palm Springs Unified School Dist.* (1985) 170 Cal.App.3d 518, 525-526 [216 Cal.Rptr. 75]: "The Supreme Court recognized that

---

[2] Education Code section 44896 states: "Whenever a person employed in an administrative or supervisory position requiring certification qualifications is transferred to a teaching position, the governing board of the school district shall give such employee, when requested by him, a written statement of the reasons for such transfer. If the reasons include incompetency, an evaluation of the person pursuant to Article 11 (commencing with Section 44660) of Chapter 3 of this part shall have been completed not more than 60 days prior to the giving of the notice of the transfer."

reinstatement is an appropriate remedy where an employee has been discharged in violation of statutory rights, but noted that, although numerous statutes list grounds for teacher dismissal and provide hearings for charges of teacher misconduct, there are no similar statutory provisions governing assistant superintendent misconduct. The court concluded: 'In the absence of such provisions sections 13314 (§§ 44893, 87454) and 13315 (§§ 44897, 87458) must be read as establishing that administrative and supervisory personnel do not possess a statutory right to their positions. The statutes vest such persons with rights to the position of classroom teachers, not to administrative positions.' (*Id.*, at p. 721.)"

The Education Code vests the governing board with the power to employ principals for schools under its control. (Ed. Code, § 35042.) A principal serves at the pleasure of the appointing body. Thus, the governing board has the ultimate authority to determine whether to renew a principal's contract. (*Jones* v. *Palm Springs Unified School Dist., supra*, 170 Cal.App.3d at p. 527.)

"Unless incompetency is a basis for a reassignment, a Board is free to transfer an administrator without cause or evaluation, for any reason satisfactory to the appointing authority, including personality conflicts or differences in views on leadership styles. [Citations.]" (*Quirk* v. *Board of Education, supra*, 199 Cal.App.3d at p. 735.)

Appellant relies upon *Jones* v. *Palm Springs Unified School Dist., supra*, 170 Cal.App.3d 518. *Jones* was an appeal from a judgment of dismissal following entry of an order sustaining without leave to amend a general demurrer to a petition for writ of mandate. The petition alleged the board had relieved petitioner, its superintendent, of her duties approximately one year into her four-year contract. She claimed she had a right to remain in the position of superintendent during the term of her written contract unless she was removed pursuant to procedures established by the board's rules and regulations. (170 Cal.App.3d at p. 528.) These procedures included evaluation, notice and a hearing before final action by the board. (*Id.* at pp. 526-527.) The court found that she had no statutory entitlement to these procedures. It also concluded that although the Education Code required the evaluation and assessment of supervisory and administrative personnel, the evaluation process was not a statutory precondition to the termination. (*Id.* at p. 527.) However, the court found that board rules and regulations had been incorporated by reference into Jones's employment contract and that those rules and regulations had been expanded by the board to provide more procedural due process than was provided by statute.

"Once the board expanded its regulations to require the evaluation prior to demotion and specify the grounds for demotion, and made those

regulations a part of plaintiff's contract, she acquired a 'legitimate claim of entitlement' to the benefits of that contract, including the rights established by the board rules and regulations." (170 Cal.App.3d at pp. 527-528.)

The *Jones* court stated further, "There is nothing in the Education Code that conflicts with board rules and regulations granting a contract employee the right to notice, a statement of reasons and a right to respond in connection with any removal from the position *during the term of the contract.*" (170 Cal.App.3d at p. 529, italics added.)

The court distinguished several cases which involved the nonrenewal of a principal's contract, noting that in such cases the principal serves at the pleasure of the appointing authority. (170 Cal.App.3d at p. 527, citing *Grant* v. *Adams* (1977) 69 Cal.App.3d 127 [137 Cal.Rptr. 834], and *Anaclerio* v. *Skinner* (1976) 64 Cal.App.3d 194 [134 Cal.Rptr. 303].) Thus, the holding in *Jones* is applicable to those cases in which the appointing authority seeks to demote during the term of a contract and the contract, by incorporation of board rules and regulations, establishes procedures which must be followed prior to demotion. By contrast, the term of appellant's contract was at an end and the board merely determined not to renew.

■ Thus, although the board's action resulted in appellant's demotion to a teaching position, the board, in point of fact, determined not to renew his contract. For purposes of determining whether the Board was compelled to follow the procedures outlined in No. 4113.2, it is crucial to understand the distinction between a midcontract demotion, such as was the case in *Jones*, and the failure to renew a contract at the end of its term. Thus, the instant case is distinguishable from *Jones* on this ground.

Appellant's central argument is that pursuant to *Jones* the board was compelled to follow No. 4113.2 because it was incorporated by reference into his contract. To be sure appellant was entitled to the benefits of No. 4113.2. The question is, what are the benefits of that regulation? Here, as distinguished from *Jones*, No. 4113.2 is conditioned upon the board's language, "It is the expectation of the governing board . . ." and "an evaluation of the employee should ordinarily have been completed . . ." and "[u]nder ordinary circumstances management personnel . . . ." Appellant strongly objects to giving any meaning to this language. ■ However, we are not free to ignore the words of the regulation: " 'In determining such intent "[t]he court turns first to the words themselves for the answer." [Citation.] We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citations.] "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation.] . . .

"When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7-8 [143 Cal.Rptr. 430.)

 If, as appellant contends, the adoption of No. 4113.2 means that *all* management personnel decisions which result in demotions or reassignments must be initiated by the superintendent, the superintendent could undermine the board's power not to renew a principal's contract by refusing to initiate the procedures described in No. 4113.2 before the March 1 deadline. Indeed, this appears to be what occurred in the present case. The facts show Furman, the superintendent, recommended appellant's contract be renewed and he "saw no need for improvement on McFall's part, no need to evaluate his performance further, and no basis for any demotion or other adverse personnel action." In our view the board, in enacting No. 4113.2, could not have intended to disable itself from exercising its statutory duty and authority to act in the best interests of the district. The overriding consideration of any demotion must be the best interests of the district.

The use of the word "expectation" in No. 4113.2 connotes its inapplicability under some circumstances. "Ordinary" and "ordinary circumstances" denote its inapplicability if the circumstances are extraordinary.

Following accepted rules of statutory construction (*Killian* v. *City and County of San Francisco, supra,* 77 Cal.App.3d 1), and giving effect to all the language of No. 4113.2, we hold the protections in the regulation inapplicable where, as here, the superintendent declines to initiate the demotion and the board determines it is necessary to demote management personnel to implement board policy. We do not pass upon what other circumstances may be extraordinary but deal only with the facts before us.

In support of his claim that the superintendent alone can initiate this process, appellant mentions in passing language in the superintendent's contract which states that the superintendent has "the primary responsibility for execution of Board policy." With respect to personnel matters, the superintendent's contract provides: "The Superintendent shall have the additional responsibility of organizing and arranging the administrative and supervisory staff, including instruction and business affairs, which in his judgment would best serve the District. The Superintendent shall have such responsibility in all personnel matters, including selection, assignment and transfer of employees, subject to the approval of the Board. In all personnel matters, the Superintendent shall present his recommendation to the Board.

In the event the Board does not approve said recommendation, and no action is taken at the meeting, the Superintendent shall submit another recommendation to the Board within a reasonable time. The Board, individually and collectively, will refer promptly all criticisms, complaints, and suggestions called to its attention to the Superintendent for study and recommendation."

The contract further states that the "parties agree, . . . not to interfere with nor to usurp the primary responsibility of the other party." The question is whether the foregoing language establishes that the board has relinquished or delegated its ultimate authority to the superintendent with respect to its decision not to renew a principal's contract.

This provision is in the superintendent's contract, not the appellant's contract, and was obviously placed in the superintendent's contract for his benefit and protection, not for the benefit of a subordinate managerial employee. Accordingly, appellant cannot rely on the terms of the contract. Further, we would be hesitant to interpret the provisions of the contract to the effect the board delegated its ultimate authority and responsibility to act on its own should the superintendent, as here, refuse to act.

### DISPOSITION

The judgment is affirmed.

Best, Acting P. J., and Thaxter, J., concurred.

Appendix

4113.2

Certificated Personnel

Promotion/Demotion

Management Personnel Demotion

It is the expectation of the governing board that if it becomes necessary to demote a person holding a management position, the superintendent will present a written statement to the board which details the reasons for the superintendent's decision, assuring that the rights of the employee are fully observed and that any applicable statutory deadlines are met. The governing board shall act on the superintendent's decision and the decision of the governing board shall be final. Under ordinary circumstances, the management employee shall be informed in writing of the deficiencies and provided available help for improvement.

In the event it is the superintendent's decision to demote the person immediately and the governing board concurs, the demoted employee shall receive pay and other benefits specified in his/her contract for the remainder of the contract period, but after expiration of the contract, a new contract will be issued according to the appropriate salary schedule.

The over-riding consideration in any demotion must be the best interest of the district.

The superintendent is to develop regulations and procedures for evaluation of management and supervisory personnel to accomplish the usual goals of evaluation.

Management Personnel Demotion Because of Layoff Necessity

If, because of declining enrollment or other lawful reasons, it becomes necessary to demote management personnel, the procedures in regulation 4117.3 will be followed.

The management employee may, at his/her discretion, have a representative at any closed session or hearing of the board in which demotion/transfer is considered. The management employee may call witnesses.

Policy
adopted: 8/10/82

4113.2

Certificated Personnel

Promotion/Demotion

Management Personnel Demotion

If an employee who holds a position requiring an administrative or supervisory credential is to be transferred to a teaching position or to a lower management position, an evaluation of the employee should ordinarily have been completed not more than sixty (60) days prior to giving notice of the transfer. Under ordinary circumstances, management personnel shall be informed in writing of the need for improvement, and available resources of the district used to attempt to correct the deficiency.

Any management supervisor who determines, on the basis of evaluation, that a management employee or supervisory employee should be demoted, shall notify the next level of supervision of this determination, in writing, including the reasons for such demotion. Each successive management supervisor, if in agreement, will refer the matter to the next level of supervision until the superintendent is reached. If the superintendent agrees with the recommended demotion, he/she shall make certain that the employee has had an opportunity to read the evaluation or evaluations and to comment by attaching a written statement to it, and also has read the management supervisor's recommendation for demotion and has had the opportunity to respond to it in writing. The superintendent will then communicate his/her decision to the governing board.

The governing board will then approve or reject the superintendent's decision, but will offer to hold a closed session to discuss the matter or to conduct a hearing prior to making its decision.

The notice of demotion or transfer to a teaching position shall be sent by registered mail to the employee's last known address by March 15, except that if the notice is presented to the employee in person the signature of the employee must be obtained on the written notice of transfer to a teaching position or demotion, also by March 15.

A principal of a school employed under provisions of Education Code Section 34042, must be notified by March 1 instead of March 15 of the intention of the governing board to release the principal from that position for the following year.

Legal Reference: Education Code
 44850.1 No tenure in administrative or supervisory
 positions
 44896 Re transfer of administrator or supervisor to
 teaching position
 44951 Continuation in position unless notified
 (position requiring administrative or super-
 visory credential)

Regulation
approved: 8/10/82