321 F.3d 903
 Barry BERNSTEIN; Anne Tracy Bolton; Linda Buffington; Brenda T. Campbell; Alex Cremidan; Patricia Dibos; Ron Echandia; Otis Funches; Mary L. Lawlor, Dr.; Jose Melchor; Ciprianita Powell; Lyle Rangel; Duane Stevens; Russell Vowinkel, Plaintiffs-Appellees,
v.
Edward LOPEZ; Sue Braun; John Debeck; Ron Ottinger; Frances Zimmerman; Alan D. Bersin; Anthony J. Alvarado; San Diego Unified City School District, Defendants-Appellants, and
Does 1-10, Defendant.
 No. 02-55119.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 6, 2002.
 Filed March 4, 2003.
 
 Yuri Calderon and Roberta R. Sistos, Burke, Williams & Sorensen, San Diego, CA, for the defendants-appellants.
 George W. Shaeffer, Jr., Irvine, CA, for the plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of California; Marilyn L. Huff, District Judge, Presiding. D.C. No. CV-99-02714-MLH.
 Before: PREGERSON, NOONAN and TASHIMA, Circuit Judges.
 Opinion by Judge NOONAN; Dissent by Judge PREGERSON.
 NOONAN, Circuit Judge:
 
 
 1
 The plaintiffs, who are former principals or vice-principals of public schools within the San Diego School District, sued the defendants, who are members of the board governing the District, as well as the superintendent of schools and the chancellor of instruction. The plaintiffs claimed that the defendants' reassignment of them to their tenured teaching positions at the beginning of a new school year violated property rights in their administrative positions secured to them by the fourteenth amendment to the constitution of the United States. The defendants moved for summary judgment on the basis of qualified immunity. The district court held that there were factual issues in dispute to be resolved by a jury. The defendants appealed. We hold that no further facts need to be determined and that as a matter of law the defendants are protected by qualified immunity because the plaintiffs have no clearly established right to continue in their administrative positions.
 
 FACTS
 
 2
 On June 15, 1999, the board, on the recommendation of the superintendent and chancellor, voted to assign the plaintiffs, then principals or vice-principals, to teaching positions, effective July 1, 1999. The new assignments paid less. The plaintiffs asked the reasons for the board's action. On July 14, 1999, the chancellor responded by explaining that a different style of leadership was required in the positions they had held. The plaintiffs attempted to appeal the decision, but the district court found no appeal procedure to be applicable.
 
 PROCEEDINGS
 
 3
 On December 29, 1999, the plaintiffs brought this suit. After various amendments of their complaint and various rulings of the district court that court denied both the plaintiffs' and defendants' motions for summary judgment. As to summary judgment on the basis of the defendants' qualified immunity, the district court ruled that there was a factual dispute as to whether Administrative Procedures 7113 and 7767 applied to the plaintiffs and that that dispute must be tried to a jury before it could be determined whether qualified immunity defeated the plaintiffs' case. The defendants appeal this denial of qualified immunity.
 
 ANALYSIS
 
 4
 Jurisdiction. Qualified immunity is a judicially-crafted device giving a large measure of protection to the exercise of judgment by public officials. Indeed it is said to protect "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). As the immunity is insulation from suit, an interlocutory appeal from the denial of immunity is appropriate, as Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) has recently illustrated. Where the immunity applies, the suit should be "dismissed at an early stage in the proceedings." Id. at 209, 121 S.Ct. 2151.
 
 
 5
 The Clouded Property Right Asserted The plaintiffs expressly disclaim any property right in tenure as principals or vice-principals but assert that the board's adoption of certain rules of administrative procedure (APs) and memoranda of understanding (MOUs) so limited the board's authority to assign their administrative positions that, in effect, the plaintiffs did have a property interest in continuing to be paid their higher administrative salaries if the APs were not observed. This property interest, they maintain, was "clearly established." At the very least, however, this proposition is debatable, and the plaintiffs fail the first step necessary to defeat the defendants' immunity, a showing that the defendants violated a clearly-established constitutional right. Id. at 201, 121 S.Ct. 2151.
 
 
 6
 Public employment in California is, in general, regulated by statute, the rights of a public employee are statutory, and "no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law." Miller v. State, 18 Cal.3d 808, 813, 135 Cal.Rptr. 386, 557 P.2d 970, 973 (1977). Statutes controlling the terms of civil service employment cannot be circumvented by contract. Boren v. State Personnel Board, 37 Cal.2d 634, 641, 234 P.2d 981, 985 (1951). Collecting California cases, we have recognized this long-standing principle of California law and held that neither an express nor an implied contract can restrict the reasons for, or the manner of, termination of public employment provided by California statute. Portman v. County of Santa Clara, 995 F.2d 898, 905 (9th Cir.1993).
 
 
 7
 Plaintiffs say that they have a case to the contrary: Jones v. Palm Springs Unified School District, 170 Cal.App.3d 518, 216 Cal.Rptr. 75 (1985). But the plaintiff superintendent in that case was hired under a California statute, Education Code § 35031, expressly providing a superintendent, "a term of no more than four years." It was only "during the term of her written contract," which Education Code § 35031 gave the school board "specific statutory authority to enter," that the plaintiff could claim any procedural rights. Jones, 170 Cal.App.3d at 528, 216 Cal. Rptr. 75. None of the plaintiffs in our case was employed pursuant to the exception created for contracts by Education Code § 35031.
 
 
 8
 The plaintiffs also cite, as clearly establishing their procedural right amounting to a property right, the case of McFall v. Madera Unified School District, 222 Cal. App.3d 1228, 272 Cal.Rptr. 345 (1990). McFall does repeat the teaching of Jones about procedures applicable "during the term of a contract," but goes on to say, "By contrast, the term of the appellant's contract was at an end, and the board merely determined not to renew." Id. at 1236, 272 Cal.Rptr. 345. The action of the board in not reappointing the principal in McFall was like that of the board here; the principal had no case.
 
 
 9
 The two cases relied on by the plaintiffs to clearly establish their right fall very far short. Where authority to make a contract is not exercised under Education Code § 35031 or § 44929.20 there is no provision excepting a school administration from general state law governing public employment. There is a provision by which after a probationary period a teacher may be certified and become "a permanent employee of the district." Cal. Educ. Code § 44885.5. There is a provision that a teacher who is assigned "an administrative or supervisory position or assigned any special or other type of work" retains "permanent classification as a classroom teacher." Id. § 44893. There is a provision that when an administrator or supervisor "is transferred to a teaching position," the board shall give him a written statement of the reasons for such transfer. Id. § 44896. The care with which these protections of a teacher's tenure are spelled out has the effect of underlining the complete lack of a provision for tenure for an administrator not under a contract executed under §§ 35031 or 44929.20.
 
 
 10
 Jones and McFall having failed to shed the required refulgence on the plaintiffs' asserted right, and the statutory scheme leaving the right unmentioned, the plaintiffs do have one fall-back. They point to deposition testimony that prior to the present administration of the district, the district did follow the APs and did interpret one or both of the MOUs as requiring the district to follow the APs in reassigning administrators. The deposition of the former school superintendent is sufficient at this stage of the proceedings to establish the past practice and prior understanding of the board and the administrators. The testimony is insufficient to show a clearly established constitutional right to property when California statutory and case law stand in favor of a school board's unrestricted statutory authority to appoint administrators to the classroom at the start of a new school year. Something more than past practice is necessary to show that the district created a property right in the administrators and clearly established it. No objective observer could conclude that such a right clearly existed or was violated by the assignments made here.
 
 
 11
 California law jealously protects the tenure of teachers, those on the front line of education. At the same time, California law does not protect the tenure of administrators, that is of those who must shape policy; their more precarious positions are given higher pay. If such administrators have any contractual rights lawfully granted by a school board, their remedy does not lie in turning their grievance into a claim that the Fourteenth Amendment has been violated but in seeking such redress as state law allows for violation of state contracts in the courts of California.
 
 
 12
 As the APs and MOUs, even if understood to apply to the plaintiffs, did not establish rights to property protected by the United States Constitution, there is no remaining factual dispute to be resolved. Summary judgment is appropriate.
 
 
 13
 The plaintiffs have given color to their case by their deposition testimony that after the June 15 meeting of the board, they were told to remove their personal papers from their offices and were escorted to their offices by armed school security officers. The plaintiffs as of this date were administratively suspended without reduction of pay, but, so far as appears in the record, there was no reason to subject them to the supervision of school security officers. The action does not establish their case. It was an unnecessary affront.
 
 
 14
 For the reasons stated, the judgment of the district court is REVERSED, and the case is REMANDED for entry of judgment for the defendants.
 
 PREGERSON, Circuit Judge, dissenting:
 
 15
 I respectfully dissent. I would affirm the district court's denial of defendants' motion for summary judgment. I agree with the district court that genuine issues of material fact remain as to whether the defendants are entitled to qualified immunity. Where the determination of qualified immunity depends on material factual disputes, it is appropriate for a court to deny summary judgment so that these disputes may be resolved by the trier of fact. Roth v. Veterans Administration, 856 F.2d 1401, 1408-10 (9th Cir.1988) (whether defendants deprived plaintiff of his property interest required "resolution of several disputed factual issues" and so the court appropriately denied qualified immunity for defendants on summary judgment).
 
 
 16
 To address the issue whether the defendants are entitled to qualified immunity, an understanding of the basic facts is essential. In the early afternoon of June 15, 1999, before plaintiffs were notified of their demotions, the San Diego Board of Education posted their names in the San Diego Unified District Educational Center informing the public that the Board intended to demote the plaintiffs at a meeting to be held that evening. That evening, armed San Diego Unified School District police officers escorted plaintiffs from their offices in schools located throughout the District to the Board of Education meeting. At this meeting, the Board notified plaintiffs that they would be removed immediately from their current positions as principals and vice-principals and demoted to their former teaching and counseling positions. Plaintiffs were told they immediately would be placed on paid administrative leave for two weeks and would return to their former teaching and counseling positions on July 1st when the new school year began. Board members told plaintiffs that they were not to return to their former schools without being accompanied by District police officers. The police officers escorted plaintiffs back to their respective schools. On their arrival, each plaintiff was instructed to remove their personal items. Plaintiffs were then escorted off of their school's premises.
 
 
 17
 Two weeks later, each plaintiff requested a separate statement of reasons for his or her demotion. The Board provided each plaintiff a statement in accordance with Cal. Ed.Code § 44896 and San Diego School District Administrative Procedure (AP) 7767 § C.4. The statements varied in content but commonly claimed that each plaintiff's style or vision "of instructional leadership fails to match the vision for school reform" set by the District. Each plaintiff then filed an administrative appeal pursuant to AP 7767 § C.4 and 7113 § C.2. Defendants informed each plaintiff that they were not entitled to an appeal nor were they entitled to any of the other due process protections set forth in the District Administrative Procedures.
 
 
 18
 The Administrative Procedures of the San Diego Unified School District had been in effect since 1976. The Board had promulgated the procedures under the authority of Cal. Ed.Code § 35160. Section 35160 authorizes the Board of a school district to enact local legislation to meet the needs of each district's unique circumstances, provided that local regulations or policies do not conflict with state law. Cal. Ed.Code § 35160(a). AP 7767 and 7113 outline District policies and procedures governing adverse actions "against certificated management, supervisory, and confidential employees." AP 7767 and 7113 provide various due process protections, such as the right to appeal and the right to representation by counsel, for employees demoted by the Board. AP 7767 defines demotion as "an involuntary change of assignment, based on employee performance, to a position at a lower salary grade." AP 7767.
 
 
 19
 Though its applicability is contested, a Memorandum of Understanding (MOU) between the School District and the Administrators Association of San Diego that clarified and fortified the due process rights of plaintiffs was also in effect at the time plaintiffs were demoted. The original MOU of 1992, the MOU that preceded the MOU in effect when plaintiffs were demoted, was the result of extensive negotiations between the Administrators Association and the School District. District officials testified that district legal counsel reviewed that agreement and the subsequent agreement. A former superintendent of the District who had participated in drafting the MOU of 1992 testified that the due process protections were intended to apply to the plaintiffs' demotion.
 
 
 20
 Defendants San Diego Unified School District and Board of Education now argue that they cannot be held to the due process guarantees these documents extended to the plaintiffs because defendants never had the authority to enact those guarantees under California law. They contend they are entitled to qualified immunity because the plaintiffs cannot have a clearly established right based on documents that are trumped by state law.
 
 
 21
 The majority accepts this argument noting that the terms of public employment in California are generally regulated by statute. The majority concludes that the silence of the Education Code on the due process protections extended in the Administrative Procedures means that no process above what is expressly granted by statute is available to the plaintiffs. Further, the majority argues that contracts cannot circumvent controlling statutes and thus no property interest can arise from the MOUs.
 
 
 22
 While I agree with the general principles cited by the majority, I find no conflict between the California Education Code and San Diego's Administrative Procedures and the Memorandum of Understanding. Assessment of this very issue by the California Court of Appeal and the District's own interpretation of state law strongly suggest that defendants did create legitimate additional due process protections for its administrative and supervisory employees. See Misasi v. W.C. Jacobsen, 55 Cal.2d 303, 308, 10 Cal.Rptr. 850, 359 P.2d 282 (1961) ("the administrative construction of a statute by those charged with its interpretation and enforcement is entitled to great weight, and courts will generally not depart from such an interpretation unless it is clearly erroneous."). The additional due process guarantees provided by the Administrative Procedures — i.e. the right of demoted administrators to appeal and to be represented by counsel — created a property interest in plaintiffs in their employment. Defendants deprived plaintiffs of their property interest when they refused to allow the plaintiffs to exercise their rights under the Administrative Procedures.
 
 
 23
 We look primarily to state courts for interpretations of state law. See Molsbergen v. United States, 757 F.2d 1016, 1020 (9th Cir.1985) (explaining that when interpreting state law, courts must look to decisions by the highest court of the state and other sources such as treatises and restatements). The California Court of Appeal, in McFall v. Madera Unified School District, 222 Cal.App.3d 1228, 272 Cal. Rptr. 345 (1990), was presented with a factual situation nearly identical to that of the plaintiffs in the instant case. In McFall, the Court of Appeal addressed the issue whether a School District is prohibited by state law from enacting additional due process protections for its principals. Under the facts of McFall, the Madera Board of Education demoted the plaintiff, a principal, at the end of his one year term. He argued that his due process rights had been violated because the Board had failed to follow its own administrative procedures that required the superintendent to initiate all demotions. The Court of Appeal ultimately decided that the District's administrative procedures explicitly limited the requirement to "ordinary" circumstances where the plaintiff's demotion had been in "extraordinary" circumstances. The important aspect of the decision is that the court approved of the additional due process protections the District had afforded the principal in their administrative procedures. McFall, 222 Cal.App.3d at 1236, 272 Cal.Rptr. 345. The Court of Appeal made no mention that the additional procedures created by the Madera School District conflicted with state law, but explicitly found that the plaintiff was entitled to those procedures. McFall, 222 Cal.App.3d at 1236, 272 Cal. Rptr. 345 ("to be sure appellant was entitled to the benefits of No. 4113.2"). The Court of Appeal further cited Jones v. Palm Springs Unified School District, 170 Cal.App.3d 518, 529, 216 Cal.Rptr. 75 (1985), with approval and quoted language from Jones indicating that the incorporation of school board rules and regulations into the plaintiff's contract expanded his due process rights. McFall at 1235, 272 Cal.Rptr. 345.
 
 
 24
 The majority makes much of the fact that both the plaintiffs in Jones and McFall served their respective terms as provided by their contract. It is important to note that if the Memoranda of Understanding apply to plaintiffs, they possessed a contract with the District that incorporated the administrative procedures. However, as the majority points out, controlling state law may not be circumvented by a contract. As a consequence, the existence of a contract could not be the basis on which the McFall court found the additional due process protections acceptable. The McFall court approved applying the additional due process guarantees accorded to the plaintiff by the administrative procedures. This strongly indicates that these additional due process guarantees are not forbidden by California law.
 
 
 25
 Our court has been clear that a contract is not required for a property interest to exist. Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir.1998) (where a rule or understanding is in place between an employer and an employee, a property interest may arise despite the lack of a contract). Even probationary or non-tenured employees may have property interests in their jobs. Roth, 856 F.2d 1401, 1409 (9th Cir.1988) ("even as a probationary employee, Roth could still have a property interest in his job"); see also Connell v. Higginbotham, 403 U.S. 207, 208, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971) (holding that a teacher without tenure or formal contract enjoyed due process rights).
 
 
 26
 Property interests are not solely grounded in state law or in contracts, but arise from a variety of sources from which rules or policies develop that create entitlements to benefits. Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (stating that "nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it"); See Perry v. Sindermann, 408 U.S. 593, 602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (finding that a "common law" of a particular institution developed by circumstances of the employee's service can also create a property interest). The plaintiffs claim that a property interest arose from the San Diego School District Administrative Procedures and the Memoranda of Understanding. However, there are material factual issues that must be resolved to determine whether the Administrative Procedures and the MOUs apply to the plaintiffs. The plaintiffs are entitled to the due process protections of the Administrative Procedures only if their demotions qualify as a demotion based on performance under the procedures. There is a factual dispute as to whether the reasons given for the demotions were based on performance. There is also a factual dispute as to whether the 1992 MOU provision that made AP 7767 and 7113 the "guarantee of due process for Management Team members" continued beyond the 1995 MOU which was silent on the subject. Board members testified that the district had no intention of eliminating the due process guarantees for Management Team members by execution of the 1995 MOU. Such removal of guarantees was never discussed with the Administrators Association. Plaintiffs also point out that the 1992 MOU stated "[t]he provisions of this agreement shall remain in effect until modified by the District and the [Administrators Association]. Any modifications must be agreed to by both the District and the [Administrators Association]." Defendants reject this evidence. Because there are factual disputes as to whether the demotions were based on performance and whether the due process guarantees were undisturbed by the 1995 MOU, the district court correctly denied summary judgment.
 
 
 27
 A property interest does not fail to be clearly established simply because the relationship among statutes, local legislation and contracts is complicated. Nor does a right fail to be clearly established simply because there are factual disputes as to whether the various instruments are applicable to the plaintiffs' particular grievances. See Roth, 856 F.2d at 1409 ("whether [a mutual] understanding [creating a property interest] exists will frequently turn on factual issues."). I would allow the case to go forward to resolve the material factual issue of whether plaintiffs' reassignments were based on their performance and so qualified as demotions under the Administrative Procedures.
 
 
 28
 I would affirm the judgment of the district court.