[Civ. No. 41443. Second Dist., Div. Three. Oct. 24, 1973.]

COUNCIL OF DIRECTORS AND SUPERVISORS OF
THE LOS ANGELES CITY SCHOOLS, Plaintiff and Appellant, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT OF LOS ANGELES
COUNTY et al., Defendants and Respondents.

**COUNSEL**

Burke, Williams & Sorensen and George W. Wakefield for Plaintiff and Appellant.

John D. Maharg and John H. Larson, County Counsel, Clarence H. Langstaff, Chief Deputy County Counsel, Betty Tom Chu, Deputy County Counsel, and Ron Apperson for Defendants and Respondents.

**OPINION**

**COBEY, Acting P. J.**—Plaintiff, Council of Directors and Supervisors of the Los Angeles City Schools (hereafter Council), appeals from a judgment denying its middle management members declaratory relief with respect to the mass demotions of certain promotional level certificated employees (generally supervisors and administrators) effected by defendant Los Angeles Unified School District (hereafter District) at the start of the 1970-1971 school year.

These mass demotions occurred because of limited funds and as a result of the decision of the Board of Education of the City of Los Angeles (hereafter Board), the governing board of the District, to decentralize the administration of the District into four zones, and to eliminate organization by function and level.

Council contends that these mass demotions of its members were made illegally and were therefore ineffective because: (1) they should have been made in accordance with the requirements of Education Code sections 13447 and 13448;[1] (2) the advance notices of these demotions were con-

---

[1]All section references hereafter are to the Education Code.

stitutionally and statutorily defective; and (3) the Board violated its own rules in making these mass demotions.[2]

## FACTS

Between March 1 and March 15, 1970, the District apparently for budgetary reasons notified in writing, pursuant to section 13443.6, all of its approximately 1,700 promotional level employees holding one-year contracts that they might be released from their positions for the coming school year 1970-1971. These written notices of possible release had the legal effect of preventing the recipients of such notices from automatically continuing in their positions during the next school year. The superintendent of schools and the deputy superintendent of schools both authorized the sending of these notices and the Board was informed at an executive session that such would be done.

On April 9, 1970, apparently in anticipation of a possible reduction in promotional level positions, the Board revised its rule 3321. As this rule existed prior to that date, it granted to school administrators, directors and supervisors whose positions as such were discontinued a right of preferential reemployment in those positions for a period of 39 calendar months. (See § 13448.) As revised, the rule established detailed procedures for the release and subsequent reassignment of personnel when certificated promotional positions were discontinued because of a reduction in the number of these positions. It placed demoted employees on reassignment lists for particular classes in reverse order of release and provided that such lists would be used for assignments to the particular class before the use of any other list and that any name would remain on the list for not more than 15 months from the date the employee's position was eliminated.

On May 11, 1970, the Board met as a committee of the whole and again in executive session. At this time its personnel and schools committee presented to it in the form of a report a list of 777 promotional level employees which the personnel division had recommended should be demoted. This list was composed of those persons as to whom the personnel division had received no assurance from various division heads that their positions would be continued in the coming school year. The Board formally by a motion duly made, seconded and carried, adopted this report.

---

[2]We have not found any substantial evidence in the record in support of the remaining contentions raised by appellant in its briefs.

Not later than May 14, 1970, the Board, through its clerk, notified all persons on the aforementioned list that because of the reduction in or discontinuance of their "particular type of service" they would be assigned on July 1, 1970, to a teaching position with a possible reassignment before September 14, 1970, to a promotional level position pursuant to the aforementioned Board rule 3321.

On June 11, 1970, the Board formally adopted a decentralization of administration plan under which the administration of the district would be done through four zones. On June 29, 1970, the Board formally demoted 278 of the promotional level employees who had been on the list the Board had considered at its previously mentioned executive session on May 11, 1970.[3] On July 13, 1970, the Board formally approved the reassignment of 24 of the demoted former promotional level employees to the new class of instructional advisor, K-12 for the four zones. This class was a combination of four previous classes and the persons reassigned were taken from an unranked list of 60 demoted former promotional level employees.

## DISCUSSION

### The Applicability of Sections 13447 and 13448

Council contends that the demotions of its members that were made at the start of the 1970-1971 school year should have been made in accordance with the requirements of sections 13447 and 13448. Generally speaking, the first mentioned section has to do with the deprivation of positions of permanent employees and provides, among other things, "that the services of no permanent employee may be terminated under the provisions of this section while . . . any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render." This section also provides that "The board shall make . . . reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render."

Under the second mentioned section any permanent employee whose services were terminated as provided in section 13447 would have the preferred right generally to reappointment in the order of original employment for a period of 39 months from the date of such termination.

Obviously the mass demotions before us were not handled as required by sections 13447 and 13448. Council argues that as "continuing" em-

---

[3]The record is not clear as to the exact number demoted.

ployees its members were permanent employees[4] and calls our attention to the fact that in 1927 the statutory coverage at issue was extended from "permanent teachers" to "permanent employees." (See Pol. Code, § 1609 in Stats. 1921, 5th "J", ch. 878, pp. 1666-1667; Pol. Code, § 1609, Stats. 1927, 3d "J", ch. 875, pp. 1916-1917.)

■ We do not find these arguments persuasive. Under section 13304 a certificated permanent school employee is a tenured employee and the most in terms of duration of employment that can be offered a certificated employee under section 13305 "in a position requiring a supervision or administration credential" is "a continuing contract to cover a period longer than one year but not to exceed four years." Section 13314 provides that "[a] permanent employee when advanced from a teaching position to an administrative or supervisory position . . . shall retain his permanent classification as a classroom teacher." According to section 13315 "[a] person employed in an administrative or supervisory position requiring certification qualifications upon completing a probationary period, . . . shall [in a district such as defendant district] be classified as and become a permanent employee as a classroom teacher." In other words, supervisors and administrators are not permanent employees as such. They are, however, permanent employees as and only as classroom teachers. (See *Holbrook* v. *Board of Education,* 37 Cal.2d 316, 334 [231 P.2d 853]; *Board of Education* v. *Swan,* 41 Cal.2d 546, 555-556 [261 P.2d 261], overruled on a different point in *Bekiaris* v. *Board of Education,* 6 Cal.3d 575, 588 [100 Cal.Rptr. 16, 493 P.2d 480].)

■ Similarly, the change in the coverage of the reduction in force statutes (now §§ 13447 and 13448) in 1927 from permanent teachers to permanent employees did not indicate a legislative intent to cover supervisory and administrative employees as such. Rather the change in language merely recognized the fact that rank and file classes of employees other than teachers may become permanent employees in their rank and file positions. (See §§ 13304, 13314.3, 13314.5; see e.g. §§ 13294, 13295, 13296, 13296.1, 13297, 13298, 13300; *Eastham* v. *Santa Clara Elementary Sch. Dist.,* 270 Cal.App.2d 807, 808-809 [76 Cal.Rptr. 198].)

The express reference to section 13447 in the District's demotion no-

---

[4]The only case cited by Council in support of this proposition is *Constantine* v. *Board of Education,* 43 Cal.App.2d 794, 795 [111 P.2d 698], a mandamus proceeding to establish tenure for an individual as a school principal. This case is not applicable because tenure in this supervisory position rested on a specific provision therefor in the Charter of the City and County of San Francisco. (*Id.,* p. 797.) By reason of section 13268, this charter provision controlled. The Charter of the City of Los Angeles does not have a similar provision.

tices, its use of language from section 13447 in those notices and its timing them in accordance with section 13447 were all mistakes because section 13447 did not apply to the mass demotions of promotional level employees of the District that became effective at the start of the 1970-1971 school year. Its provisions should have been ignored.

## The Validity of the Advance Notices

Council attacks the validity of the warning notices given during the first two weeks of March 1970 to approximately 1,700 promotional level employees of the District and also the validity of the advance notices given to some 777 of these employees not later than May 14, 1970. The basis for Council's attack upon the March notices is that the giving of them was unauthorized by the Board. It is true that the Board apparently took no formal action to authorize the giving of these notices, but it was apprised in executive session that they would be sent, and the giving of the notices was authorized by both the superintendent and the deputy superintendent.

Section 13443.6 requires the giving of these warning notices.[5] It is silent, however, as to how the giving of these notices shall be authorized. ■ Since these notices are merely warning notices of possible release, we see no reason why the giving of them had to be formally authorized by the Board itself. Under section 939, subdivision (b), the superintendent had the authority, subject to the approval of the Board, to assign all certificated employees of the District. The warning notices at issue were merely preliminary to a possible reassignment. The greater includes the lesser. We hold that the superintendent and his deputy could properly authorize the sending of these warning notices—particularly since the Board had first been apprised in executive session that they were going to be sent.

As already indicated, Council now challenges the validity of the May notices. With respect to these notices Council claims that they were unconstitutionally vague in not informing each recipient whether his or her

---

[5]In March 1970, section 13443.6 read in pertinent part: "Unless a certificated employee holding a position requiring an administrative or supervisory credential receives written notice by March 15 that he may be released for the following school year, the employee's contract shall be renewed on the same terms and conditions as were embodied in his last contract." (See Stats. 1969, ch. 1545, § 1.)

The District's conduct in giving the advance notices it gave of these demotions was legally inconsistent. On the one hand it gave the warning notice required by section 13443.6. On the other hand, it then gave the advance notice required by section 13447 for termination of employment pursuant to that section. But section 13443.6 has always provided that its provisions do not apply to termination of employment pursuant to section 13447.

particular type of service as a promotional level employee was being reduced or discontinued. Council further asserts that they were given arbitrarily because no reasons for the demotions were given in them and the plan for the administrative decentralization of the District had not even then been adopted.

■ These contentions lack merit. The giving of the May 14 notices were required to be done before June 15 by Board rule 3107 to prevent an automatic renewal of the recipients' one-year contracts. The recipients, having no tenure in their promotional level positions from which they were being demoted, were not entitled to constitutional due process prior to the deprivation of the positions because their interest in the positions was not encompassed by the Fourteenth Amendment's protection of liberty and property. Stated otherwise, their expectation of continued employment in their promotional level positions was not an interest warranting such constitutional protection. (See *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 569, 575-578 [33 L.Ed.2d 548, 556, 560-561, 92 S.Ct. 2701].)

As just indicated, the Board was required by its own rule 3107 to send out the demotion notices prior to June 15 in order to prevent the automatic renewal otherwise of the recipients' one-year contracts of employment. The notice gave to the recipients as much information about the situation as the Board then generally had. We see nothing unconstitutional in either the giving of these notices or in the content of these notices.

### The Reassignments Were Properly Made

Finally, Council contends that since the reassignments of promotional level employees resulting from the District's administrative decentralization and the District's shortage of funds, were made without regard to either merit in the form of competitive examinations or seniority in the sense that unranked eligibility lists were used for reassignment, they were illegal and therefore ineffective. ■ But all of those reassignments were made pursuant to Board rule 3321 which had just been revised obviously to provide a detailed procedure for release and reassignment of demoted promotional level employees. This rule was the special Board rule that governed this shift in personnel. It was followed. Council does not contend otherwise.[6] Nothing more was required. Board rules 3031 and 3032 and

---

[6]Council does contend that the Board was not privileged to change this rule in April 1970. We do not agree. The affected employees were all on one-year contracts and the revised rule was not applied against them until those contracts had expired.

former Board rule 3036 relating to employment, transfer and promotion of certificated employees on the basis of merit and seniority that Council claims the Board should have followed are all general rules. They did not apply in view of the existence of this specific rule applicable to this reduction in promotional level positions.

We hold that the District's mass demotion of various promotional level employees at the start of the 1970-1971 school year was accomplished according to law. In so holding we do not mean to intimate that the manner in which the District handled these demotions constituted good personnel practice.[7] It was, nevertheless, legal and therefore effective.

The judgment denying plaintiff declaratory relief is affirmed.

Allport, J., and Loring, J.,* concurred.

---

[7] In this connection, see section 13314.7, added by Statutes 1971, chapter 759, page 1503, section 1, and section 13346.32, added by Statutes 1971, chapter 1654, page 3561, section 1, effective September 1, 1972.

*Assigned by the Chairman of the Judicial Council.