Filed 2/28/18; pub. order 3/23/18 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KAREN HAYES, | D072998 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1505923) |
| TEMECULA VALLEY UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, John W. Vineyard, Judge.  Affirmed.

Wagner & Pelayes, Dennis E. Wagner and Jacob P. Menicucci for Plaintiff and Appellant.

Walsh & Associates, Dennis J. Walsh and Alice Chung for Defendant and Respondent.

Karen Hayes appeals a judgment denying her writ of mandate petition seeking an order directing the Temecula Valley School District (District) to reinstate her as a middle

school principal. The District removed Hayes as principal and reassigned her to a teaching position for the 2015-2016 school year under its statutory authority to reassign a school principal without cause. (Ed. Code, § 44951.)[1] The District also placed Hayes on paid administrative leave through the end of the 2014-2015 school year.

Hayes primarily challenges her release and reassignment from her school principal position and, to a lesser extent, her placement on paid administrative leave for about three months. She contends the court erred in denying her writ petition because: (1) the District's notice of the no-cause reassignment was untimely as the governing school board (Board) did not approve the notice until two days after the March 15 statutory deadline (§ 44951); (2) her removal was in fact "for cause" and therefore she was entitled to a hearing and due process before the removal and reassignment; and (3) her placement on paid administrative leave violated statutes and internal District policies.

On the first issue, we determine the notice was timely because the statutes do not require school board preapproval for a section 44951 March 15 notice to be valid. We conclude the remaining contentions are without merit on the factual record before us. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Under the applicable review standard, we summarize the facts accepting the truth of the District's evidence and drawing all reasonable factual inferences favoring the

---

[1] Statutory references are to the Education Code unless otherwise specified.

court's ruling.[2] (See *Agosto v. Board of Trustees of Grossmont-Cuyamaca Community College Dist.* (2010) 189 Cal.App.4th 330, 336 (*Agosto*).)

Hayes served as a principal at Margarita Middle School beginning in 2002. During the next 12 years, she received positive performance reviews and was viewed favorably by many teachers, parents, and students. In late 2014, a female teacher (JD) at the middle school complained about a male teacher (RF). Hayes was responsible for investigating and resolving the complaint, with the assistance of District's human resource directors Joe Mueller and Tiffany Martinez. After the investigation, Hayes found some of JD's complaints against RF to be substantiated.

In early 2015, RF submitted a Public Records Act request to the District for documents related to the complaint and investigation, including Hayes's emails. While gathering the responsive records, Mueller found that Hayes's email communications showed she had not been objective and impartial in the investigation. He believed the emails were unprofessional, and Hayes had showed favor toward JD and bias against RF.

Mueller immediately showed the emails to Tim Ritter, the District's superintendent (Superintendent). After his evaluation of the emails, the Superintendent decided to provide Hayes with notice of possible release and reassignment to a teaching position for

---

[2] In the appellate briefs, Hayes's counsel does not comply with this review standard, and instead discusses only evidence and inferences favorable to Hayes's position. Counsel also makes factual assertions unsupported by the record. We disregard the statements in the briefs inconsistent with the applicable review standard and/or unsupported by the factual record.

3

the next year because he had lost confidence in her abilities to serve as principal at the middle school. The next day, on March 11, 2015, the Superintendent and the human resource directors met with Hayes and gave her a reassignment notice, which Hayes signed. The March 11 notice, titled "Notice of Possible Release and Reassignment," stated in relevant part:

> "You are hereby given notice *pursuant to Education Code section 44951* that you *may* be released from your present position as Middle School Principal and reassigned to another certificated administrative or teaching position, effective at the end of the 2014-2015 school year. The Board of Education will take action on this matter and provide additional notice prior to June 30, 2015, if you are to be released and reassigned.
>
> "This notice does not preclude any other administrative or disciplinary action which may otherwise be appropriate under specific circumstances." (Italics added.)

The identified statute, section 44951, governs the timing and nature of a preliminary notice (known as a March 15 notice) required before a school district can reassign a school principal for "no-cause."[3] As discussed below, this statute requires a

---

[3] Section 44951 states: "Unless a certificated employee holding a position requiring an administrative or supervisory credential is sent written notice deposited in the United States registered mail with postage prepaid and addressed to his or her last known address by March 15 that he or she may be released from his or her position for the following school year, or unless the signature of the employee is obtained by March 15 on the written notice that he or she may be released from his or her position for the following year, he or she shall be continued in the position. The provisions of this section do not apply to a certificated employee who holds a written contract with an expiration date beyond the current school year, or to a certificated employee holding a position that is funded for less than a school year, or to a certificated employee assigned to an acting position whose continuing right to hold this position depends on being selected from an eligible list established for the position, or to the termination of employment pursuant to Section 44955. "

school district to provide notice by March 15 that a school administrator "may be released from his or her position for the following school year." (§ 44951.) Without this notice, a no-cause transfer from administrator to a teaching position is invalid, and the principal may continue in his or her position under the same terms and conditions for the next school year. (*Ibid.*)

At this March 11 meeting, the Superintendent also gave Hayes a letter stating that, "effective today," she was being placed on "paid administrative leave until further notice." The letter said the purpose of the leave was "to allow the District to conduct an investigation into allegations of misconduct." Hayes was also told she had the option to voluntarily resign her principal position before the next scheduled school board meeting (March 17) to allow her to "land softly" if she wanted to apply to a different school district without a public record of removal. Contrary to Hayes's assertions, the record does not support that she was told the District intended to terminate her.

At the end of the March 11 meeting, the Superintendent asked Hayes if she had any personal items she needed from her office between March 11 and the March 17 Board meeting. Later that evening, Mueller met Hayes at the middle school to allow her to retrieve her briefcase, but Hayes began removing all of the items in her office, which surprised Mueller, as the Board had not taken action regarding her possible removal and release.

The next morning, on March 12, Hayes sent an email to the District's human resources department asking for clarification of her choices, including whether she was

being terminated.  Later that day, a District human resources director sent a lengthy letter

to Hayes explaining her options:

> "You have been served notice pursuant to Education Code section
> 44951 that you may be released and reassigned to the classroom or
> another certificated position at the end of the 2014-2015 school year,
> *without cause*.  This is a preliminary notice to meet the statutory
> March 15 deadline.  This recommendation has not yet been made to
> the Board and the Board has not yet taken action.
>
> "The [D]istrict will complete its investigation in advance of the
> March 17, 2015, Board meeting.  This will allow the administration
> to make a recommendation on that date concerning your release and
> reassignment *without cause* at the end of the school year.
>
> "*Should the circumstances warrant, as determined by the results of
> the investigation*, the administration *may* recommend an immediate
> release and reassignment for cause.  This would involve serving and
> filing an official statement of charges of misconduct with the Board,
> after which you would be provided the due process called for in such
> a case.
>
> "The decision on whether either recommendation will be presented
> to the Board . . . has not yet been made, and will depend on the
> results of the investigation.  [¶] . . . [¶]
>
> "Each of the two administrative recommendations under
> consideration and described above, if approved, will involve formal
> action of the Board to release you from your position as Principal
> and reassign you to a classroom or other certificated position.  The
> first option is without cause, effective at the end of the school year.
> The second option is for-cause, based upon a formal statement of
> charges, and would be effective immediately upon completion of the
> required due process.  Neither of these actions will terminate your
> status as a permanent certificated employee of the . . . District and
> you will retain the attendant rights and responsibilities.
>
> "As always, you have other options available to you that would
> eliminate the need for formal Board action.  Whether you consider a
> voluntary resignation in lieu of formal Board action is a matter for
> you to consider and discuss with your personal representative, if

6

desired.  Any such action would require written confirmation from you prior to 2:00 pm on Friday March 13, 2015. [¶] . . . [¶]

"*If necessary,* on March 17, 2015, District administration will brief the Board on the results of the investigation and (*if warranted*) the options for administrative, corrective, or disciplinary action.  The Board will hear specific allegations and/or charges against you.  This will occur during the closed session portion of the meeting beginning at or about 4:15 p.m. on Tuesday March 17, 2015 . . . .

"You are hereby notified that pursuant to Government Code section 54957, you have the right to have this matter considered in open, public, session instead of closed session.  If you desire to have this matter heard in open session, you must notify me at or before 4:00 p.m. on Monday March 16, 2015.

"After the Board meeting you will be notified of the specific course of action chosen by the Board and of your further rights and responsibilities. [¶] . . . [¶]

"As discussed in our meeting on March 11, 2015, you have been placed on paid administrative leave pending the District's investigation into your conduct in handling complaints between staff at your school site, and related issues.  While on paid administrative leave you are to remain available for interviews concerning this matter and any other matter within the scope of your employment.

"Furthermore, the District reserves the right to reassign you to an equivalent position at another site, including a possible assignment to the District Office as a Principal on Special Assignment.  This would be a temporary, non-disciplinary action with no loss of status, title, or pay, pending the resolution of the matter of your continued employment."  (Italics added.)

The next morning (March 13), Hayes's attorney sent an email to the District stating: "We request an open hearing [referring to the District's March 12 letter].  I would appreciate any and all documents being used to consider termination of Ms. Hayes."  Hayes's attorney also attached a letter stating in part:

7

"[Hayes] has been informed that she is to be *terminated* by Board Action to take place at the next regular meeting on Tuesday, March 17, 2015. This is to advise you that we intend to appear and request a full hearing in Public Session on any proposed termination action to be taken against Ms. Hayes. [¶] I am in receipt of [the March 11] letter . . . which indicates the District intends to investigate allegations of misconduct against her. This is to request any and all investigative materials and that persons involved be present at the Board meeting next Tuesday. . . . "

Later that day, the District's counsel wrote to Hayes's counsel stating that Hayes was not being terminated, and instead she was being recommended for a no-cause release from her administrative position and reassignment to a teaching position or other certificated position. The letter stated in part:

"A for-cause release and reassignment comes with a modicum of due process, whereas a release and reassignment without cause does not (in light of the at-will nature of the administrative assignment) other than the notice and Board action prescribed by [section] 44951. *The administration has decided not to pursue the more aggressive, for-cause procedure and thereby avoid the necessity for a presentation of any allegations and a formal statement of charges, and instead to recommend only the no-cause release and reassignment due to general lack of confidence, etc. Accordingly, there will be no presentation of any specific allegations (complaints or charges) against Ms. Hayes on Tuesday and her rights under [Government Code section] 54957 will not be triggered.*

"The administration's recommendation will occur in closed session. Ms. Hayes has no right to any form of public hearing, and no hearing will be provided. . . . [¶] . . . [¶]

". . . [U]nless [Hayes] chooses to submit [her] immediate [resignation], the District will likely bring her back from paid administrative leave in a temporary assignment as a Principal on Special Assignment at the District Office. This would be a temporary, non-disciplinary reassignment with no loss of title, status, or pay, intended to protect her, the staff, and the students of the school site from the firestorm that will likely occur if she is returned to [the middle school]. . . . Her emails, which we are being forced to

8

turn over under a Public Records Act request, paint her conduct in handling a staff complaint against a teacher in a very negative and unprofessional light and there is no way we can avoid disclosure of that fact."

That same day, human resources director Mueller prepared an internal report summarizing his investigation of Hayes's conduct that led to the Superintendent's decision to propose a no-cause reassignment. In the report, Mueller said that while complying with RF's public records request, Mueller "became aware of several unprofessional emails between [JD] . . . and . . . Hayes." After quoting from many of these emails, Mueller concluded:

> "The documentation outlined above demonstrates that . . . Hayes grossly mishandled the investigation of [JD's] complaint . . . . [Hayes's] unprofessional communication with the complainant and failure to maintain confidentiality demonstrates a lack of leadership. Furthermore, by disclosing sensitive complaint information to the complainant throughout the handling of the complaint investigation, it appears that Ms. Hayes did not intend to provide [RF] with an unbiased due process [review].

> "[One of] Ms. Hayes's email[s] [also] indicates she was dishonest about assisting the complainant in writing the complaint. Because this email is subject to mandatory public disclosure, it is likely to result in another complaint in response. Similarly, [Hayes's] comments about the teachers' union create potential liability for an unfair labor practice charge. The way [Hayes] handled the investigation reflects negatively on Ms. Hayes's credibility, professionalism and reputation. The likely effects are significant harm to the reputation of the District and further distrust issues amongst the District's employees and administrators."

On March 17, the Board held its meeting and, in closed session, voted to adopt the Superintendent's recommendation to release and reassign Hayes without cause. The approved motion stated: "Motion to approve providing [Hayes] with written notice that

9

she shall be released from her administrative position and reassigned to a classroom or another certificated position at the conclusion of the current school year on June 30, 2015." After the Board vote, the District's counsel expressed willingness to discuss with Hayes's counsel the possibility of reassigning Hayes as a Principal on Special Assignment during the remainder of the 2014-2015 school year. This discussion apparently never occurred, and Hayes remained on paid administrative leave.

About two weeks after the vote, Hayes's counsel wrote to the District, asking why Hayes was "still on administrative leave," and noting that Hayes has not been permitted to participate in any investigation, including to provide her version of the events. The next day, the District's counsel responded:

> "The investigation you are so interested in simply involved the District reviewing several emails that reflected Ms. Hayes' poor judgment and lack of professionalism, contributing to their recommendation that she was not a good fit for the principal position and that the Board should release and reassign her. Your criticism of the extent/thoroughness of the investigation is based on your misunderstanding that it was relied upon to establish 'cause' for the Board action. In fact, it was nothing more than simply a written summary of the District's review of some emails. It was not offered as evidence or in support of any findings of 'cause' since no for-cause recommendation was ever made, as I have clearly stated to you. The admin's recommendation was a routine not-for-cause release and reassignment based on lack of confidence, as we have consistently explained to you."

District's counsel also said that "Any changes to [Hayes's] current status of paid administrative leave will be determined by the District, with notice to your client."

About two months later, in May 2015, Hayes filed a petition for writ of mandate against the District under Code of Civil Procedure section 1085, seeking to set aside the

10

Board's decision to release her as middle school principal and requesting an order requiring reinstatement to the principal position. Of relevance here, Hayes alleged: (1) the March 11 notice for a no-cause reassignment was improper because it was not authorized by the Board before March 15; (2) she was denied her due process rights because she was not provided a written statement of charges and an opportunity to respond regarding her alleged misconduct; and (3) her placement on paid administrative leave violated her due process rights, statutes, and District regulations.

The District opposed the petition, arguing: (1) the Supervisor's March 11 notice was timely because the statutes do not require Board authorization before the March 15 statutory deadline; (2) Hayes was not entitled to a hearing or other related due process protections because the reassignment was not "for cause"; and (3) there is no requirement that the Board approve a decision to place a principal on paid administrative leave pending an investigation.

While the writ petition was pending, the District continued its investigation of Hayes's conduct for another year. As part of this investigation, the District asked to interview Hayes on several dates in June and July 2015. Although Hayes initially agreed to be interviewed, she later canceled each of the scheduled times, and never agreed to a later interview.

During the next school year (2015-2016), Hayes was assigned as a teacher at another District school, and she worked in this position during that year. Toward the end of the school year, in April 2016, the District notified Hayes's counsel that the investigation into her conduct had not been completed because the District had not had

11

the opportunity to interview her, and rejected Hayes's assertion that her deposition could substitute for the interview.

In mid-May 2016, the District closed its investigation, and delivered its final investigation report to Hayes. In the report, the District found Hayes had violated applicable performance standards, including by failing to resolve disputes in a neutral and unbiased manner, creating a culture of favoritism and divisiveness at the middle school, and using the District's email system for nonwork-related emails. The report stated the document "is not considered to be disciplinary in nature" because she is no longer an administrator, but the findings "confirm the District's decision to release and reassign [Hayes] to a teaching position" under section 44951.

Meanwhile, during these latter several months (March through May 2016), Hayes and the District briefed the issues and submitted written evidence in Hayes's superior court writ of mandate action. This evidence (summarized above) included documentary evidence, depositions transcripts, and declarations. After the parties agreed to submit the matter on this written record and argument, the court evaluated the evidence and conducted a hearing. The court then denied Hayes's writ of mandate petition. The court found that the District reassigned Hayes under a "no cause" procedure, and therefore she was not entitled to a hearing or related due process protections. The court also rejected Hayes's remaining arguments, including that the March 11 reassignment notice was untimely because it was not approved by the Board before March 15.

DISCUSSION

I. *Writ of Mandate*

To obtain relief under Code of Civil Procedure section 1085, " 'the petitioner must show there is no other plain, speedy, and adequate remedy; the respondent has a clear, present, and ministerial duty to act in a particular way; and the petitioner has a clear, present and beneficial right to performance of that duty.  [Citation.]  A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment.' "  (*James v. State of California* (2014) 229 Cal.App.4th 130, 136 (*James*).)

In reviewing a judgment granting or denying a writ of mandate petition, " 'we apply the substantial evidence standard of review to the court's factual findings . . . .' " (*James, supra,* 229 Cal.App.4th at p. 136; accord, *Cox v. Los Angeles School District* (2013) 218 Cal.App.4th 1441, 1444-1445.)  We are governed by this review standard even " 'when the matter is heard only on written evidence . . . .' "  (*Agosto*, *supra*, 189 Cal.App.4th at p. 336.)  " '[A]ll conflicts in the written evidence are resolved in favor of the *prevailing* party, and factual findings are examined for substantial evidence.' "  (*Ibid*.) On questions of law, including statutory interpretation, the appellate court applies a de novo review and makes its own independent determination.  (*Ibid.*)

II. *Overview*

The Education Code contains a comprehensive statutory scheme governing the employment rights of public school teachers and administrators.  Under this scheme, school principals are permanent employees only as to a teaching position.  (*Thompson v.*

*Modesto City High School Dist.* (1977) 19 Cal.3d 620, 624; *Jefferson v. Compton Unified School Dist.* (1993) 14 Cal.App.4th 32, 38-39 (*Jefferson*).)  They have no statutory or constitutional rights to their administrative position and can be removed from this position at will.  (See *Barthuli v. Board of Trustees* (1977) 19 Cal.3d 717, 721-722; *Gilliam v. Moreno Valley Unified School Dist.* (1996) 48 Cal.App.4th 518, 521 (*Gilliam*); *Quirk v. Board of Education* (1988) 199 Cal.App.3d 729, 734-735 (*Quirk*); *Hentschke v. Sink* (1973) 34 Cal.App.3d 19, 22 (*Hentschke*).)  A principal's "expectation of continued employment" in his or her administrative position "is not a constitutionally protected property or liberty interest."  (*Grant v. Adams* (1977) 69 Cal.App.3d 127, 136, fn. 6, 132-133.)

However, a principal's removal and reassignment is subject to certain mandatory notice requirements.  (§ 44951; *Hoyme v. Board of Education* (1980) 107 Cal.App.3d 449, 454 (*Hoyme*)  These requirements are designed "to afford affected administrative employees adequate notice of a possible reassignment and sufficient time to . . . seek other satisfactory . . . administrative employment" before the beginning of the next school year.  (*Gilliam*, *supra*, 48 Cal.App.4th at p. 521; accord, *Ellerbroek* v. *Saddleback Valley Unified School Dist.* (1981) 125 Cal.App.3d 348, 367, 369 (*Ellerbroek*).)  If the notice is not properly or timely given, a school district is no longer free to change the administrative employee's assignment at its pleasure.  (§ 44951; see *Hoyme*, at pp. 454-455.)  In that circumstance, a change in assignment requires cause, which triggers an employee's right to various statutory protections, including a notice of specific charges and a hearing.  (See §§ 44932-44946.)

14

In this case, the superior court found Hayes's removal from her principal position was a "no-cause" reassignment, and that the District strictly complied with statutory notice requirements for the reassignment. Hayes challenges these findings by arguing: (1) the Superintendent's section 44951 reassignment notice was not timely because the Board did not approve the notice until March 17; (2) even if the notice was timely, she was entitled to due process protections because the "no cause" justification was pretextual and her removal from her position was actually "for cause"; and (3) her placement on paid administrative leave from March 11 through the end of the 2014-2015 school year violated applicable statutes and regulations. We consider each of these contentions below.

### III. *Board Approval Not Required Before March 15 Notice Date*

Section 44951 sets forth the statutory requirements for a timely and proper notice as a precondition to a no-cause removal. (See fn. 3, *ante*.) Strict adherence to the statutory mandate is essential. (*Hoyme, supra,* 107 Cal.App.3d at pp. 454-455.) "The requirement of proper notice in accordance with the section is jurisdictional; unless such notice is given, the reassignment of a principal to a teaching position is ineffective and subject to reversal." (*Ibid*.) The notice requirement applies regardless whether the principal is released and reassigned to a teaching position or to another administrative position. (*Ellerbroek*, *supra*, 125 Cal.App.3d at p. 366.)

Hayes admits she received a written notice, signed by the Superintendent, before March 15 that she may be released from her position the following year, and that she signed this notice. But she argues this notice was ineffective because the Board did not

15

formally approve the notice before it was given to her.  The argument is without merit because the statutes do not require pre-March 15 Board approval.

First, the governing statute, section 44951, does not state the school board must approve the notice before the March 15 date.  Instead, it refers only to the need to have written notice "sent" to the employee's last known address or to obtain the employee's "signature" on the notice by the statutory deadline.  (§ 44951.)  Because section 44951 does not include a requirement of school board approval before the March 15 date, we cannot fairly construe the statute to mandate this requirement.  Appellate courts may not add provisions to a statute or rewrite it to conform to an asserted "intent that does not appear from its plain language."  (*People v. Connor* (2004) 115 Cal.App.4th 669, 692; accord, *Ed H. v. Ashley C.* (2017) 14 Cal.App.5th 899, 910-911.)  In interpreting section 44951, our task is " 'simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . .'  [Citation.]  We cannot add limiting language . . . when the Legislature did not."  (*Pacific Gas and Electric Company v. Superior Court* (2017) 10 Cal.App.5th 563, 571.)

This conclusion is consistent with the purpose of section 44951's notice requirement, which is to "afford an administrator proper [and formal] notice of a *possible* change in duties and assignment in sufficient time to seek other satisfactory employment as an administrator."  (*Ellerbroek*, *supra*, 125 Cal.App.3d at p. 367, italics added.)  This purpose is served if the notice is sent by the school superintendent before or after receiving formal school board approval by the March 15 date.  The critical point is that

16

the employee must *receive* this notice by the statutory date, not the date of the governing board's approval. Hayes admits she received the notice on March 11, giving her ample time to seek alternate employment.

Hayes's reliance on section 35035 is misplaced. Section 35035 provides a school superintendent with broad authority to act on behalf of the governing school board as its "chief executive officer," which necessarily encompasses the authority to send required notices. (§ 35035, subd. (a).) This code section states that "[s]*ubject to the approval of the governing board*," the school superintendent has the power to "assign all employees of the school district employed in positions requiring certification qualifications to the positions in which they are to serve," and to "transfer a teacher from one school to another school at which the teacher is certificated to serve within the school district when the superintendent concludes that the transfer is in the best interest of the school district." (§ 33035, subd. (e), italics added.)

Relying on the "[s]ubject to the approval of the governing board" language (§ 35035, subd. (e)), Hayes argues the Board is required to have approved her removal and reassignment by March 15. We agree that a governing board—which has ultimate authority over district policies and employees (§ 35010)—must approve a superintendent's decision to remove and reassign a principal before the next school year (§ 35035, subd. (e)), but in this case the Board did so on March 17, 2015, by its formal vote. There is nothing in section 35035, subdivision (e) stating that this approval must come *before* the preliminary section 44951 notice is served.

17

In nonetheless urging us to hold the March 11 notice was ineffective, Hayes cites *Ellerbroek*, *supra*, 125 Cal.App.3d 348, a case decided more than 35 years ago that interpreted a different version of section 44951. To explain the *Ellerbroek* decision and why we find it no longer reflects controlling law, it is necessary to start with the 1970 version of the statute (numbered 13443.6 at that time), and briefly trace the evolution of the statute to the present date.

In 1970, section 13443.6 read: "Unless a certificated employee holding a position requiring an administrative or supervisory credential receives written notice by March 15 that he may be released for the following school year, the employee's contract shall be renewed on the same terms and conditions as were embodied in his last contract." (Stats. 1969, ch. 1545, § 1; see *Council of Directors and Supervisors v. Los Angeles Unified Sch. Dist.* (1973) 35 Cal.App.3d 147, 152, fn. 5 (*Council of Directors*).)

Interpreting this language, the *Council of Directors* court held the statute did not require the school board's *pre*approval to validate the March 15 notices, and found the notices were effective even though they were "unauthorized by the Board" before the March 15 statutory deadline. (*Council of Directors*, *supra*, 35 Cal.App.3d at p. 153.) In that case, the Los Angeles Unified School District superintendent and his deputies had notified *all* of the district's promotional level employees (approximately 1,700) by March 15, 1970 that they might be released from their positions for the next school year. (*Id.* at pp. 150, 153.) The employees challenged the statutory notices on the ground that the notices had to be preapproved by the governing board. (*Id.* at p. 153.) Rejecting this argument, the court reasoned that although section 13443.6 required the notices, the

18

statute "is silent . . . as to how the giving of these notices shall be authorized. Since these notices are merely warning notices of possible release, we see no reason why the giving of them had to be formally authorized by the Board itself. . . . [T]he superintendent had the authority, subject to the approval of the Board, to assign all certificated employees of the District. The warning notices at issue were merely preliminary to a possible reassignment." (*Ibid.*) The court also observed that the governing board had been aware of the notices, even though it had not approved them before they were sent. (*Ibid.*)

While the *Council of Directors* case was pending, in 1971 the Legislature amended section 13443.6. (Stats. 1971, ch. 611, § 1, p. 1214.) This amendment (effective in 1972) added one sentence to the end of the statute: "A certificated employee serving under Section 35042 [i.e., a principal] shall be notified by March 1 *if the governing board determines on an individual basis that he may be released for the following school year.*" (*Ibid.*, italics added.)

Several years later, the Legislature renumbered section 13443.6 to its existing code section, section 44951, without substantive change. (Stats. 1976, ch. 1010, § 2.) Five years later, in 1981, the *Ellerbroek* court interpreted section 44951's added final sentence—"A certificated employee serving under Section 35042 [i.e., a principal] shall be notified by March 1 if the governing board determines on an individual basis that he may be released for the following school year"—to mean that the "preliminary notice . . . must be authorized, *in advance*, by formal board action." (*Ellerbroek*, *supra*, 125 Cal.App.3d at p. 374, italics added.). The *Ellerbroek* court explained:

19

"The last sentence . . . was added to the [statute] in 1971 . . . as a direct legislative reaction to the case of *Council of Directors . . .* , which was *then pending* in the Court of Appeal, . . . which interpreted [the former statute to mean that] since that section was silent on how the giving of the notices provided for therein should be authorized and 'since these notices are *merely warning notices of possible release*, [there was] no reason why the giving of them had to be formally authorized by the Board itself.' [Citation.] The [*Council of Directors*] court then concluded that the notices required by [former section 44951] could be authorized by the superintendent subject to the later ratification by the board.

"But in 1971, the Legislature acted with respect to principals, to delineate how the giving of the preliminary notices of possible release were to be authorized. This amendment, as set forth above, now requires the governing board to determine on an individual basis that a principal may be released for the following year.

"[Even if there was any remaining issue with the *Council of Directors* holding], . . . [w]ith the language added by the 1971 amendment, there is no longer any question that with respect to the release of a *principal*, prenotice or prerelease formal board action is required for both the March 1 preliminary notice of possible release and the final effecting of that release which must be done prior to the new school year on July 1." (*Id.* at pp. 374-375.)

In 1988, the Legislature made a nonsubstantive change to the final sentence of section 44951 by substituting the words "school principal" for the phrase "certificated employee serving under Sections 35042." (Stats. 1988, ch. 1461, § 19.5.)

Five years later, in 1993, the Legislature amended section 44951 one final time (to date). (Stats. 1993, ch. 261 (S.B. 818), § 1.) In this amendment, the Legislature deleted the entire last sentence of section 44951: "A school principal shall be notified by March 1 if the governing board determines on an individual basis that he may be released for the following year." Thus, the statute currently (as set forth in footnote 3, *ante*) contains no reference to the "governing board," or to an earlier March 1 date. (§ 44951.) After this

20

amendment, principals are treated the same as the other specified administrative employees with respect to the required March 15 preliminary notice deadline. (§ 44951.)

We agree with the District that this 1993 amendment eliminated any requirement that a school board must authorize the serving of a section 44951 notice to a school principal before the statutory deadline. Under the current version of the statute, there is nothing stating or suggesting that the Board must formally authorize before March 15 the sending of the notice that a principal may be subject to a no-cause reassignment during the next school year. Similarly, there is nothing in section 35035 limiting a superintendent's power to issue the March 15 notice only if he or she has received *prior* approval from the governing board.

The Legislature's decision to delete section 44951's final sentence that had been interpreted in *Ellerbroek* to require board preapproval provides strong evidence that the Legislature intended to eliminate the preapproval requirement. The *Council of Directors* court held preapproval was not required, and the *Ellerbroek* court found this holding was no longer controlling *because* the Legislature added the sentence referring to a determination by the governing board. (*Ellerbroek*, *supra*, 125 Cal.App.3d at pp. 374-375; *Council of Directors*, *supra*, 35 Cal.App.3d at p. 153.) The Legislature then *deleted* this sentence referring to the governing board. (Stats. 1993, ch. 261 (S.B. 818), § 1.) We must presume "the Legislature is deemed to be aware of existing judicial decisions that have a direct bearing on the particular legislation enacted." (*City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 606.) In view of *Council of Directors* and *Ellerbroek*, the Legislature's 1993 deletion of the "if the governing board

21

determines" language from former section 44951 denotes the Legislature's intent to eliminate the requirement that a school board preapprove the statutory notice.

This conclusion is further supported by viewing related statutes, which show that if the Legislature intended to preserve the board authorization requirement, it could have easily done so. Many other Education Code sections expressly provide that the governing board must itself approve a particular action. (See e.g., §§ 35031, 37702, 51521; see also §§ 44018, subd. (a), 48930, 51520.) For example, at the time the Legislature deleted the reference to the governing board in section 44951, the statute governing employment of superintendents (and deputy, associate, and assistant superintendents) provided in relevant part: "In the event *the governing board* of a school district determines the superintendent of schools [or his or her assistant, deputy, associate, assistant] . . . is not to be reelected or reemployed as such upon the expiration of his or her term, he or she shall be given written notice thereof *by the governing board* at least 45 days in advance of the expiration of his or her term." (§ 35031, italics added; see *Jenkins v. Inglewood Unified School Dist.* (1995) 34 Cal.App.4th 1388, 1392-1394.) In *Jenkins*, the court relied on section 35031's "by the governing board" statutory phrase to conclude the *school board* was required to authorize the notice to an assistant superintendent before the notice became effective. (*Jenkins*, at p. 1394.)

There is no similar language in the current version of section 44951. From the absence of this language, we reasonably infer the Legislature did not intend to require board authorization before the March 15 date for the notice to be effective. (See *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 825 ["Where statutes

22

involving similar issues contain language demonstrating the Legislature knows how to express its intent, ' "the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed . . . ." ' "];  *Levin v. United Airlines* (2008) 158 Cal.App.4th 1002, 1022.)

Hayes's argument that the 1993 amendment did not change the board-preapproval requirement is based on her reading of legislative history materials.  In these materials, the legislative committees referenced only the date change (from March 1 to March 15), and there is no discussion of an intent to change the preapproval requirement established in *Ellerbroek*.  (See, e.g., Sen. Com. on Education, Analysis of Sen. Bill No. 818 (1993-1994 Reg. Sess.) as amended Apr. 12, 1993; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 818 (1993-1994 Reg. Sess.), Jul. 9, 1993; Assem. Com. on Education, Analysis of Sen. Bill No. 818 (1993-1994 Reg. Sess.) as amended Jun. 21, 1993.)  Additionally, the Senate Education Committee staff analysis contains a statement that under "[c]urrent law . . . governing boards are required to give notice to employees of their intention to terminate employment by March 15," but that "school principals must be notified by March 1 of impending layoffs."[4]  (Sen. Com. on Education, Analysis of Sen. Bill No. 818 (1993-1994 Reg. Sess.) as amended Apr. 12, 1993.)

---

[4]    Hayes also cites to a legislative committee report referring to certain "technical amendments" recommended by the executive branch that reflect " '*the administration's* desire "to change current law as little as possible . . . ." ' "  (Assem. Com. on Education, Rep. on Sen. Bill No. 818, Reg. Sess. (1993-1994), as amended June 21, 1993, p. 2, italics added.)  Those comments are taken out of context and do not pertain to or attempt to explain the deletion of the last sentence of section 44951.

On our careful review of the legislative history materials, we conclude they do not alter the plain meaning of the current version of section 44951. First, there is nothing in the legislative history showing the Legislature intended to continue the requirement of board preapproval for March 15 notices to school principals. Although the date change appears to have been the primary reason for the amendment, this does not mean the Legislature did not intend an additional change when it deleted the reference to the "governing board." Additionally, even assuming the committee reports can be read as reflecting the legislative view that before the amendment, board preapproval was required as to all administrative employees (not just principals), a legislative opinion regarding an existing statute's meaning " ' "is neither binding nor conclusive in construing the statute." ' " (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922; see *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 473 [" 'Legislature . . . has no . . . authority simply to say what it *did* mean' "].)

The fact legislative history materials do not reflect discussion on a particular topic does not necessarily mean the Legislature did not intend to change the law. The Legislature deleted the statutory language referring to a school board's determination to remove a school principal, and this deletion occurred after the *Ellerbroek* court held this particular language imposed the obligation on a school board to preapprove the March 15 notice. The objective manifestation of the legislative intent (the words of the amended statute) controls over silence in the legislative history record. Courts are not permitted to "speculate that the Legislature meant something other than what it said. Nor will we rewrite a statute to posit an unexpressed intent." (*Morton Engineering & Const., Inc. v.*

24

*Patscheck* (2001) 87 Cal.App.4th 712, 716.) " 'The plain meaning of words in a statute may be disregarded only when that meaning is " 'repugnant to the general purview of the act,' or for some other compelling reason . . . ." ' " (*California State University, Fresno Association, Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 266.) If the statutory language is clear and unambiguous, we presume the Legislature meant what it said and do not look behind the face of the statute to seek out some unexpressed intent. (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268.)

On our analysis of the applicable statutes and history of the amendments, we conclude that if the Legislature had meant to continue to require pre-March 15 school board approval for school principal reassignments, it would have retained the "governing board" language. By deleting the sentence that the *Ellerbroek* court interpreted as requiring board *pre*approval to validate a March 15 notice, the Legislature intended that board preapproval would no longer be required for section 44951 notices to school principals.

## IV. *Claimed Pretextual "No Cause" Reassignment*

Hayes alternatively contends that even if the section 44951 notice was properly and timely authorized, the no-cause release and reassignment was invalid because the District subjectively believed it had "for cause" reasons to reassign her.

In asserting this contention, Hayes maintains the District triggered a no-cause reassignment merely because it wanted to avoid providing her with due process protections, including an open hearing on its misconduct allegations. She argues that "[r]eassigning [her] without cause pursuant to [section] 44951 was a pretext to deny her

25

due process because the District [made the no-cause determination] only after [she] invoked her right to an open hearing."  Hayes maintains that "[b]y flip-flopping between with cause and without cause," and by repeatedly accusing her of misconduct without giving her an opportunity to respond, the District "purposefully circumvented [her] valuable due process rights."

These arguments are unavailing.

First, the trial court rejected Hayes's argument that the decision to use the no-cause release and reassignment procedure (instead of the for-cause procedure) was pretextual, i.e., for an improper or unlawful reason.  In her appellate briefs, Hayes identifies facts in the record that she says support a contrary conclusion.  However, the applicable review standard requires that we assume the court found the District's evidence was true, and disregard the conflicting evidence, *and* that we draw all inferences in the District's favor. (*Agosto*, *supra*, 189 Cal.App.4th at p. 336.)  Applying this review standard, the District's evidence supports that the District in good faith made the decision to use the no-cause procedure to reassign Hayes for the next school year based on the Superintendent's loss of confidence in Hayes's ability to serve in a leadership position at the middle school. This loss of confidence occurred immediately after a school official reviewed Hayes's emails that were required to be released to the public.

Hayes does not challenge that a loss of confidence is sufficient to support a no-cause reassignment.  (See *Hentschke, supra,* 34 Cal.App.3d at pp. 22-23.)  But she maintains the Superintendent's asserted justifications were unfair and unsupported; that he was biased against her and wanted to terminate her from the beginning; and he

26

invoked the "no cause" termination solely to avoid an open public hearing on the issues. These assertions are based on her version of the evidence, which the trial court rejected. For example, Hayes argues she was instructed to remove all of her items from her office on May 11, whereas the District officials testified she was told only to gather her items she would need during the investigation before the Board meeting. Additionally, although Hayes testified she was told the District would recommend that she be terminated if she did not resign, the District officials denied saying this. Likewise, the fact that the human resources director initially informed Hayes that the investigation into the particular emails had been completed did not preclude the District from making the reasonable decision to continue the investigation of other alleged issues with Hayes's activities at the middle school.

Additionally, even assuming Hayes is correct that the District made the decision to reassign Hayes "without cause" to avoid a public hearing or because it did not believe there were sufficient facts to prove a misconduct case under the specific statutory standards (§§ 44932, 44934), there is nothing improper about this reasoning. Because a principal's position is at-will, a school district need not establish the principal engaged in the type of misconduct specified in the "for cause" termination statutes to trigger a school district's right to reassign a principal to a teaching position. "Compliance with [the statutes] for removing a principal is simple. It does not require a finding of cause, may be based upon no more than a personality conflict, and does not entitle the affected administrator to a hearing." (*Hoyme*, *supra*, 107 Cal.App.3d at p. 454; accord *Quirk*, *supra*, 199 Cal.App.3d at p. 735; *Hentschke*, *supra*, 34 Cal.App.3d at pp. 22-23.)

27

Further, a school district has the discretion to determine when and whether to seek disciplinary action, and the form of any necessary response to perceived work performance issues. (*Jefferson*, *supra*, 14 Cal.App.4th at p. 39.)

Hayes contends the District violated section 44934 by removing her from her position without allowing her to be heard. However, section 44934 applies only to a suspension or dismissal for cause, and Hayes was not suspended or dismissed, nor was she removed and reassigned for cause.

We also find unhelpful Hayes's reliance on the fact that the March 17 Board agenda item regarding the Superintendent's recommendation for Hayes's reassignment was titled "Public Employee Discipline/Dismissal/Release/Complaint." Hayes contends this language describes a "for cause" dismissal, and therefore her release and reassignment must have been for cause and thus should have triggered due process protections.

On the record before us, the trial court could reasonably conclude this agenda title fairly encompassed the issues to be addressed—whether Hayes should be released and reassigned for no cause based on the Superintendent's lost confidence in her ability to continue to serve as principal. The record supports that by the time of the March 17 hearing, Hayes and her counsel were fully informed of the no-cause nature of the recommended release and reassignment, and the trial court had a reasonable basis to conclude that Hayes was not misled by the written agenda. Likewise, the fact that a different agenda title was used at a prior Board meeting for a different employee who was

also subject to a no-cause release and reassignment does not show the Board engaged in any unlawful actions with respect to the vote on Hayes's release and reassignment.

## V. *Paid Administrative Leave*

In addition to challenging the Board's determination to release and reassign her to a teaching position for the 2015-2016 school year, Hayes challenges the Superintendent's decision to place her on paid administrative leave during the remaining portion of the 2014-2015 school year (from March 11 through July 1). She contends: (1) the Superintendent's stated justification for this action—that it was conducting an investigation—was pretextual and false; and (2) the Superintendent did not have authority to place her on paid administrative leave because the Board never approved this action. These contentions are without merit.

First, in challenging the Superintendent's justification for the paid administrative leave (the need to complete an investigation), Hayes is asking this court to reweigh the evidence and to second-guess the trial court's factual conclusions. She argues, for example, that the District's counsel informed her the investigation was completed by March 2015 and therefore any continuing investigation was unnecessary; the human resources directors' shifting explanations for the investigation cast doubt as to whether there was any need for further investigation; and the fact she was placed on administrative leave was merely a pretext to remove her as principal without having to satisfy the statutory requirements applicable to a for-cause immediate reassignment or dismissal.

29

The court was not required to accept these factual arguments. The court had a reasonable basis to credit the District's evidence that there was a need to fully investigate Hayes's conduct as principal at the middle school, including to conduct a broader review of Hayes's emails (not limited to the emails pertaining to the specific dispute between RF and JD), and that Hayes was partially at fault for the length of the investigation because of her unwillingness to submit to an interview. Although Hayes argues that the interview was unnecessary because the District's attorneys had taken her deposition, the court could reasonably reject this assertion because the topics to be raised at an investigation interview would be different from the issues raised in the lawsuit.

On the second issue, Hayes does not cite any authority showing a school superintendent needs school board approval before placing an employee on paid administrative leave. She argues only that the District "provide[s] no legal authority that allows a superintendent to place an administrator on paid administrative leave *without notifying* the Governing Board." However, Hayes does not cite to any evidence in the record showing the Board did not have notice of the administrative leave decision.[5] Moreover, it is Hayes's appellate burden to show error; it is not the respondent's obligation at this stage of the case to identify specific authority for its actions. (See *County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1443.)

In any event, as discussed above, the record supports that the Superintendent did have this power. Under section 35035, subdivision (e), the Superintendent functions as

---

[5]     Hayes's assertions that the Board was unaware of this fact is not supported by her record citations.

the Board's "chief executive officer," and the Board's internal policy rules expressly delegate broad discretionary authority to the Superintendent to serve as the District's "educational leader" and to make decisions concerning the District's "internal operations." (See Board Policies 2110, 2210.) Based on the applicable statutes and administrative rules, the Superintendent had the authority to decide that a school principal should not continue to serve at the particular school while an investigation into the principal's conduct was ongoing.

In her reply brief, Hayes cites to Board Policy 4114, and argues that the paid administrative leave decision reflected an "involuntary transfer" and that such transfers can "be made only in extenuating circumstances and such circumstances do not exist here." She forfeited this argument by failing to raise the issue in her opening brief. (See *Foxen v. Carpenter* (2016) 6 Cal.App.5th 284, 295.) Moreover, this Board policy is qualified by the rule that exceptions may be made "in extenuating circumstances" if the exception benefits the school or the District, and is made with "good and sufficient cause." (Board Policy 4114.) The record shows this exception was satisfied in this case.

Hayes makes several additional contentions in her briefs. We have reviewed each of these arguments and determine they are without merit. For example, she contends she was denied "her rights under [section] 44031." This code section pertains to personnel records, and provides: "Information of a derogatory nature shall not be entered into an employee's personnel records unless and until the employee is given notice and an opportunity to review and comment on that information. The employee shall have the right to enter, and have attached to any derogatory statement, his or her own comments."

31

(§ 44031, subd. (b)(1).)  The record shows the District complied with this statute by notifying Hayes on March 11 that, "A copy of this correspondence will be placed in your personnel file after ten (10) days.  You have the right to respond pursuant to Education Code section 44031 and to have that response attached and included in your file."  Hayes does not identify any other information placed in her personnel file that she did not have the opportunity to review and provide comment.

Moreover, to the extent Hayes contends that the District erred in failing to comply with section 44896, the argument is without merit.  Section 44896 requires "a written statement of the reasons for [the] transfer" *if* the statement is "requested" by the administrator.  There is nothing in the record showing Hayes requested a section 44896 written statement.  Under this code section, a principal is also entitled to an evaluation 60 days before the transfer notice if "incompetency" is a basis for the "no cause" reassignment.  (§ 44896.)  Hayes concedes she was not entitled to this evaluation procedure because she was not released for "incompetency."

DISPOSITION

Judgment affirmed.  Appellant to bear respondent's costs on appeal.


                                                            HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.

Filed 3/23/18

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KAREN HAYES, | D072998 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1505923) |
| TEMECULA VALLEY UNIFIED SCHOOL DISTRICT, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion filed February 28, 2018, was not certified for publication.  It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1105(a), for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

34

Copies to:  All parties